SEALED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

AMERICAN AIRLINES, INC., a Delaware )
Corporation, )
)
*Plaintiff,* )
)
v. )
)
Anthony R. Spada II, )          Case No. _____
)
*Defendant.* )
)
)
)
)
_____ )

# COMPLAINT

Plaintiff American Airlines, Inc. ("American"), by its attorneys, brings this action to enjoin Defendant's fraudulent activity and infringement of American's trademarks and copyrights. It is well established that the airline industry suffered numerous setbacks during the COVID 19 pandemic as have those who typically work for the airlines. As the industry continues to recover, and as Americans have returned to work, one of the most critical challenges continues to be the recruiting and hiring of employees to carry out the many critical support functions that enable the airline industry to serve the public. Anything that interferes with the recruiting and hiring of employees by airlines results in significant harm to jobseekers, the travelling public, and the airlines. Scammers have taken full advantage of this industry challenge. This complaint addresses this new threat to job seekers, the travelling public, and the airline industry.

Scammers are cheating jobseekers by pretending to be American Airlines. The scammers use fraudulent email messages to trick jobseekers in the United States into believing they are being

1

invited to work at American. The scammers tell the unsuspecting jobseekers they need to attend a New Hire Orientation, which does not actually exist. The scammers demand the jobseekers provide personal information via a fraudulent New Hire Form prior to attending this nonexistent New Hire Orientation. The scammers also insist the jobseekers pay for a (fake) Criminal Background Check before attending the nonexistent New Hire Orientation. Victims of this scam end up paying for a nonexistent background check *and* turning over sensitive personal information. In some cases, the jobseekers show up to the nonexistent New Hire Orientation before realizing they have been scammed. While this scam affects all jobseekers, this has a disproportionate impact on those in historically under-represented communities.

American seeks preliminary and permanent injunctive relief and all other remedies available under the laws of the United States and the State of Florida and alleges as follows:

## NATURE OF ACTION

1.      This is an action for trademark infringement and counterfeiting, cyberpiracy, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, et seq.; for copyright infringement under 17 U.S.C. §501; for false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act; and for civil conspiracy under Florida law.

## THE PARTIES

2.      Plaintiff American Airlines, Inc., ("American") is a Delaware corporation with a principal place of business at 1 Skyview Drive, Fort Worth, Texas, 76155.

3.      American owns and operates the domain name <aa.com> which it has used to host its primary website since 1998. American also owns and operates many other domain names including <American.com> which redirect to its website at <aa.com>.

4.      Defendant Anthony R. Spada II ("Spada") is an individual who resides at 19380

ACTIVE 687254882v5

Collins Ave., Apt. 1215, Sunny Isles Beach, Florida 33160-2237.

5.      Spada is one of the primary beneficiaries of the fraudulent scams described herein, along with yet unidentified individuals. On information and belief, Spada created or directed the creation of more than one hundred PayPal accounts. For each of these PayPal accounts, Spada provided a false name, false address, and false company name. For each of these PayPal accounts he also provided an email address, a routing number and an account number at a U.S. bank ("PayPal-linked U.S. bank accounts"). Spada opened several of the PayPal-linked U.S. bank accounts under his own name and has opened multiple accounts at over a dozen U.S. banks. Spada used the PayPal accounts to collect funds from defrauded jobseekers, transferred those funds to the PayPal-linked U.S. bank accounts, consolidated the funds among select ones of the PayPal-linked U.S. bank accounts, and used those funds to pay for personal expenses, trips and food, and to pay for advertising and digital marketing to further his fraudulent scheme. On information and belief, Spada also owned and/or controlled several of the domain names and/or email addresses that were used to defraud jobseekers, as described in more detail below.

6.      On information and belief, Spada holds himself out as "George Wilson" or "Peter Harrington," the "Recruitment Director" for American Airlines in the city where the job seeker is searching for a position.

7.      On information and belief, Spada owns and operates email addresses that use domain names that are similar to or incorporate American's well known "American Airlines" and "AA" marks and include george.wilson@flydiraa.com, george.wilson@directaase.com, george.wilson@aadirectee.com, george.wilson@aadirecthh.com, george.wilson@amairll.com, george.wilson@OneWorldAA.com, george.wilson@flyaaow.com, george.wilson@aaflydirect.com, george.wilson@skyaadi.com, peter.harrington@airdiroi.com,

peter.harrington@flydirectaa.com, peter.harrington@directaaci.com, peter.harrington@oneworldaae.com, peter.harrington@oneaadire.com, and peter.harrington@onedirectaae.com. The email messages direct victims to access a "New Hire Form" at another domain name that incorporates or is similar to American's "AA" mark, including aaflydd.com and aaapplyhh.com. The domain names redirect the jobseekers to online forms hosted at third party websites, which collect the jobseekers' personal information and direct the jobseekers to make payments to the Defendant's payment account for a fake background screening. The Defendant also sends text messages using SMS short codes[1] to the jobseekers purporting to be from American Airlines and includes fake phone numbers in the fraudulent email messages to the jobseekers. In addition, several of these domains are registered to a Miami Beach address.

8.      On information and belief, Spada owns and/or operates the domain names, email addresses, online forms, phone numbers, SMS short codes, and payment accounts at issue in this case.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a) and (b), because the claims address federal questions concerning federal copyright infringement under 17 U.S.C. § 501 and violations of the Lanham Act, including trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, cyberpiracy under 15 U.S.C. § 1125(d), federal unfair competition under 15 U.S.C. § 1125(a), and federal trademark dilution under 15 U.S.C. § 1125(c).

10.     This Court has jurisdiction over the claims in this action that arise under the laws

---

[1] An SMS short code is a shortened phone number that is 5 or 6 digits in length that can be used to send and receive text messages. Short codes are usually used to send large numbers of text messages as part of marketing campaigns.

of the State of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.     This Court has personal jurisdiction over Defendant because American's claims for trademark infringement and counterfeiting, cyberpiracy, unfair competition, and dilution arise from acts conducted and harm sustained in a number of states including Florida. Defendant directly targets consumers in the United States, including in Florida. Specifically, Defendant reaches out to Florida residents by sending email messages bearing counterfeit imitations of American's trademarks providing links through which Florida residents can submit a job application on interactive website forms and payment through the PayPal platform. The Defendant is committing tortious acts directed at a number of states including Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial harm in a number of states including Florida. Further, upon information and belief, Florida is a key nexus of Defendant's scheme. Finally, upon information and belief, Defendant is a resident of Florida and likely plays a central role in the scheme to defraud consumers and harm American.

12.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to this claim occurred in this district. Particularly, Defendant's scheme to defraud job seekers is centered on his ability to create fraudulent websites and domain names. Further, Defendant is targeting job seekers nationwide, including job seekers in this district. In addition, Defendant resides in South Florida, and has used businesses in South Florida to further the scheme.

ACTIVE 687254882v5

## **FACTUAL BACKGROUND**

## **AMERICAN AIRLINES' VALUABLE RIGHTS**

13.     American is the largest air carrier in the world and enjoys a reputation in the United States and internationally as a premier airline for business and leisure travelers. American and its affiliates serve hundreds of destinations in dozens of countries, with thousands of daily flights. At the end 2021, American employed around 130,000 people worldwide. These employees include tens of thousands of customer service representatives, gate agents, baggage handlers, ticket agents, mechanics and other operations employees. By 2019, American had become the third-largest private employer in Miami-Dade County with more than 13,500 team members and an annual payroll exceeding $1.8 billion.

14.     American has invested heavily in recruiting new employees, both worldwide and in southern Florida. This includes holding job fairs, both at colleges and high schools, and includes developing programs to help students pay for school in preparation for a job at American. Miami is one of American's primary hubs and is considered by many to be the gateway to Latin America, via American flights. These jobs are critical to American's ability to provide on-time operations, while at the same time providing valuable employment, pay and benefits to thousands of employees in southern Florida. American currently has hundreds of open positions in southern Florida.

15.     During its more than 90-year history, American has developed global name-recognition and goodwill and has become a household name. A significant component of American's success has been its investment in its brand and intellectual property. For decades, it has used and continues to use the trade name "American Airlines" and numerous trademarks and service marks such as AA, AMERICAN AIRLINES, and the "Flight Symbol," both alone and in

6

connection with other words and designs (the "American Marks"). American's brands, trade names, and other intellectual property are the result of significant investment and worth billions of dollars.

16.     To protect its significant investment in the American Marks, American registers its trademarks with the U.S. Patent and Trademark Office ("USPTO") on the Principal Register, and registers its unique artwork, like the "Flight Symbol" with the U.S. Copyright Office. The "Flight Symbol" is the subject of U.S. Copyright registration No. VA0002130520. American also registers its trademarks in many other countries throughout the world.

17.     American's registered American Marks include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| AMERICAN AIRLINES | 4939082 | April 19, 2016 | (Int'l Class: 35) Sales promotion; promoting the goods and services of others by means of a loyalty program,discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private club membership; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites ofothers in the field of books, computers, software,office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise. (Int'l Class: 37) Repair and maintenance of aircraft, vehicles, aircraft-related facilities, baggage-related facilities, and air travel-related facilities; refueling of aircraft and land vehicles; ground support services in the field of air transportation, namely, aircraft de-icing services, aircraft interior and exterior cleaning, and sanitation. (Int'l Class: 39) Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing air transportation reservation services for others, providing vehicle reservation services for others, |

7

| | | | |
|---|---|---|---|
| | | | providing cruise reservation services for others, and providing vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individualsand for groups; providing information in the field of travel by means of a global computer network; providing lounge facilities, namely, airport services featuring transit lounge facilitiesfor passenger relaxation and also including shower facilities<br><br>(Int'l Class: 41)<br>Providing online electronic publications, namely,online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of an inflight entertainment system; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of a personal computer or tablet.<br><br>(Int'l Class: 43)<br>Food and drink catering; providing food and beverage services in conjunction with providingfacilities in the form of a private club for conducting business, meetings and conferences;providing conference room facilities, food and beverage lounge facilities, and amenities, namely, food, drink, catering, and restaurant; providing hotel reservation and coordination services for others by means of a global computer network; travel agency services, namely, making reservations and booking for temporary lodging; entertainment services, namely, providing a general purpose arena facility for sports, entertainment, trade shows,exhibitions and conventions. |
| **AMERICAN AIRLINES** | 5279167 | September 5, 2017 | (Int'l Class: 09)<br>Computer application software for mobile devices and handheld computers, namely, software for providing information in the fieldsof travel, transportation and loyalty award programs; computer application software for mobile devices, namely, software for tracking and redeeming loyalty program awards; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status |

| | | | |
|---|---|---|---|
| | | | (Int'l Class 38) Providing internet access |
| **AMERICAN AIRLINES** | 5592865 | October 30, 2018 | (Int'l Class 36)<br>Issuance of credit cards through a licensee |
| **AMERICAN AIRLINES** | 5573314 | October 2, 2018 | (Int'l Class 25)<br>Clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class 28)<br>Toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes;playing cards<br><br>(Int'l Class 36)<br>Banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; issuance of credit cards through a licensee |
| Design Only | 4449061 | December10, 2013 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservationservices for others, vehicle reservation services for others, cruise reservation services for others and vacation transportation reservation services by means of a global computer network; providing information in the field of travel bymeans of a global computer network |
| Design Only | 5559145 | September 11, 2018 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinatingtravel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketingand check-in services; airport ramp services; transporting aircraft at airport; providing aircraft parking and storage; aircraft towing; transportation services, namely, checking of baggage; airport services featuring transit loungefacilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely,transfer of checked |

9

| | | | baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities; air passenger wheel-chair services at airport; leasing of aircraft; leasing of components of aircraft; leasing of aircraft engines; transporting of aircraft engines for others; airport services featuring transit lounge facilities for passengers |
|---|---|---|---|
| AA | 514292 | August 23, 1949 | (Int'l Class 39)<br>Air transport of passengers and freight |

18.    The trademark registrations for the American Marks are valid and subsisting. Copies of these are attached collectively as **Exhibit B**. A copy of the copyright registration information for the Flight Symbol is attached as **Exhibit C**.

19.    Over the past several decades, American has used the American Marks, both alone and in combinations with other words and designs, in connection with travel and transportation services, among numerous other goods and services, in interstate commerce.

20.    In addition to its registered rights, American has strong common-law rights in the American Marks by virtue of extensive use and promotion in commerce.

21.    The American Marks serve as unique and famous source identifiers for American's transportation services, travel agency service, and travel reservation services.

22.    American is also widely ranked as one of the best places to work. American was ranked by Forbes in 2020 as one of the best employers for diversity. The Human Rights Campaign Foundation rated American as one of the best places to work for LGBTQ+ Equality and gave American a 100% score on its corporate equality index, for the years 2020-2022. American's goodwill is therefore associated with American's trademarks not only in the minds of consumers, but also in the minds of jobseekers.

23.    American also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

10

24.     American has extensively used its American Marks on its websites to promote jobs listings. Specifically, American uses the American Marks on its employment website at <jobs.aa.com>. Screenshots of this website are attached as **Exhibit D.**

## DEFENDANT'S WRONGFUL CONDUCT

25.     In email messages sent to job seekers, Defendant fraudulently holds himself out as "George Wilson" or "Peter Harrington," the "Recruitment Director" for American Airlines, and possibly other names and titles as well, in the city where the job seeker is searching for a position. The fraudulent email messages purport to offer the victim a position with American and to officially invite the victim to attend a New Hire Orientation. The fraudulent email messages then tell the victim to fill out a New Hire Form that authorizes American to perform a Criminal History Background Check, which is required pursuant to Federal law (49 CFR 1544.229), and then pay a fee for the Criminal History Background Check. The email messages direct victims to access the New Hire Form at another domain, which then redirects victims to online forms created by the Defendants on various online form websites including JotForm.com, CognitoForms.com, AidaForm.com, and Formstack.com. The form websites collect the victims' personal information. After victims complete the New Hire Form they are directed to a PayPal page where they are instructed to pay around $100 purportedly for a Criminal History Background Check.

26.     American identified 113 PayPal accounts (which are some, but not all, of the PayPal accounts that are part of this scheme) via third party discovery. Discovery from PayPal relating to these 113 accounts showed many different email addresses and company names associated with each PayPal account. It also showed that the money obtained from victims and deposited into the PayPal accounts was then moved to a variety of other accounts at US banks.

27.     Spada took steps to evade detection and hamper discovery of his wrongdoing. For

11

example, the individual names, company names and addresses on the PayPal accounts are fake. The US bank accounts that these PayPal accounts are linked to are under different names. This name mismatch has hampered discovery as the various US banks, diligently protecting their customers' privacy, declared they have "no records" matching the PayPal account records. American has nevertheless obtained records from several of the US bank accounts. Of the limited number of PayPal-linked US bank accounts for which American has obtained records, all of them are under the name "Anthony Spada."

28.     Spada creates multiple email accounts, PayPal accounts, and other bank accounts as a matter of course. To date, American has identified accounts at more than a dozen US banks linked to this scheme. American has confirmed that Spada personally created multiple accounts at several banks to further this scheme; it remains to be seen whether he has other co-conspirators or is exclusively responsible for the scheme.

29.     Spada has taken other steps to evade detection. As a matter of course, he uses UPS stores as his primary mailing address. He has, on information and belief, created dozens of domain names and email addresses to spread out his criminal activity. He has, on information and belief, purchased ads through foreign countries.

30.     While these steps to avoid detection have in fact substantially hampered American's investigation, American has nevertheless obtained sufficient bank records to definitively demonstrate that Anthony Spada purchased ads relating to the scheme described herein and received funds from the defrauded jobseekers described herein.

31.     The email messages Defendant has sent to defraud jobseekers look like legitimate American email messages because the Defendant uses the term "American Airlines" repeatedly throughout the messages, and the messages are sent from email addresses that are based on domain

names that are similar to or incorporate American's well known "American Airlines" and "AA"
marks. The email addresses include

- george.wilson@flydiraa.com,
- george.wilson@directaase.com,
- george.wilson@aadirectee.com,
- george.wilson@aadirecthh.com,
- george.wilson@amairll.com,
- george.wilson@OneWorldAA.com,
- george.wilson@flyaaow.com,
- george.wilson@aaflydirect.com,
- george.wilson@skyaadi.com,
- peter.harrington@airdiroi.com,
- peter.harrington@flydirectaa.com,
- peter.harrington@directaaci.com,
- peter.harrington@oneworldaae.com,
- peter.harrington@oneaadire.com, and
- peter.harrington@onedirectaae.com.

The domain names that the email addresses use to send the fraudulent messages redirect victims
to the American webpage to create the appearance of legitimacy and to simulate the other domain
names owned by American. The "from" name in the fraudulent email messages is listed as
"American Airlines"; the "American Airlines" trademark and Flight Symbol is prominently
displayed in the fraudulent email messages; the signature block claims to be from the Recruitment
Director of American Airlines; and the American Airlines" trademark and Flight Symbol appear
again at the bottom of the fraudulent email messages under the signature block. The email signature
block also includes a link to American's actual website.

32.     The links to the New Hire Form likewise use domain names that incorporate or are
similar to American's "AA" mark, including aaflydd.com and aaapplyhh.com. These bogus
domain names redirect victims to forms created by the Defendant to collect personal information
from jobseekers who believe they have been invited to a New Hire Orientation by American. Once
redirected, the forms prompt the applicant to submit their name, email address, phone number, and

ACTIVE 687254882v5

date of birth. After victims submit the New Hire Form, they reach a PayPal form, used for collecting a "background check" or "fingerprinting" fee. Jobseekers think they are sending their personal information and payment to American, when in fact they are sending it to fraudsters who created the emails and forms. American never receives the information the jobseekers provide in the fraudulent forms or the payment submitted through PayPal.

33.     If the jobseekers who receive the fraudulent email messages do not complete the New Hire Form and pay for the background check promptly, Defendant also sends text messages using sms short codes to the jobseekers urging them to do so.

34.     Defendant also includes fake phone numbers in the fraudulent email messages to the jobseekers so if the jobseeker has questions about the email or job opportunity, they can call the number and Defendant, or one of the yet unidentified individuals, will answer, pretend to represent American, and urge the jobseeker to complete the New Hire Form and pay for the background check.

35.     At least some of the victims of this scam have actually shown up for the fake New Hire Orientation before realizing they have been scammed.

36.     On information and belief, the personal information these fraudsters collect from jobseekers can be used to commit other crimes and frauds, including but not limited to, gaining access to the jobseekers' social media accounts, bank accounts, credit history, and appropriating the jobseekers' identities for use in other crimes.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. § 1114)

37.     American repeats and realleges each of the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

ACTIVE 687254882v5

38.    American owns valid federally registered trademarks for the American Marks, among others, for use in connection with goods and services in the airline industry.

39.    American's federally-registered trademarks are inherently distinctive, and continue to acquire further substantial distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of American's widespread and continuous use of the American Marks, the American Marks have become associated in the minds of the relevant purchasing public with American. The reputation and goodwill that American has built-up in its American Marks is of great value to American.

40.    American has prior rights in the American Marks in connection with travel reservation services in the United States.

41.    Defendant has adopted designations and designs that are identical to or substantially indistinguishable from the genuine American Marks in appearance, sound, meaning, and commercial impression, such that consumers would likely confuse the respective marks, or cause mistake or deception as to the origin, sponsorship or approval of, Defendant's websites ("Counterfeit American Marks"). Defendant's adoption of counterfeits of the American Marks includes, but is not limited to, the use of those marks in email message content and in domains and subdomains.

42.    Defendant has used the Counterfeit American Marks in commerce with the offering of employment for travel-related services in the United States without the approval or consent of American.

43.    Defendant's use of the Counterfeit American Marks without consent from American is willful and intentional infringement of American's federally registered marks.

44.    On information and belief, Defendant has derived unlawful gains and profits from

15

his infringing use of the Counterfeit American Marks.

45.    The goodwill of American's business is of great value, and American will suffer irreparable harm should Defendant's infringement be allowed to continue to the detriment of the trade reputation and goodwill of American.

46.    Defendant's aforesaid acts have caused and, unless acts are restrained by this Court, will continue to cause great and irreparable injury to American.

47.    American has no adequate remedy at law.

48.    By virtue of its aforementioned acts, Defendant has violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

## COUNT II
## CYBERPIRACY (15 U.S.C. § 1125(d))

49.    American repeats and realleges each of the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

50.    Defendant has registered, used, and is using the following domain names: <aaflydd.com>, <aaapplyhh.com>, <flydiraa.com>, <directaase.com>, <aadirectee.com>, <aadirecthh.com>, <amairll.com>, <OneWorldAA.com>, <aaworldwidedirect.com>, <flyaaow.com>, <aaflydirect.com>, <flyaaww.com>, <aairone.com>, <aaflyone.com>, <airdiroi.com>, <oneworldaae.com>, <oneworldaai.com>, <oneworldaav.com>, <oneaadire.com>, <aaesue.com>, <aalld.com>, <aallf.com>, <aaseria.com>, <aawsou.com>, <airdirio.com>, <amerairoo.com>, <ameriairee.com>, <ameriairss.com>, <amerieo.com>, <amerioe.com>, <appaadir.com>, <appdiraa.com>, <darssuo.com>, <directaace.com>, <directaaci.com>, <aaesuo.com>, <aaserie.com>, <airdiroi.com>, <ameriairuu.com>, <directaaco.com>, <suwour.com>, <aaflyhr.com>, <aairdir.com>, <skyaadi.com>, <flydirectaa.com>, <onedirectaae.com>, which are confusingly similar to the American Marks, to

16

impersonate American and perpetrate fraud which constitutes a bad faith intent to profit from American's trademarks in violation of the Anticybersquatting Consumer Protection Act of 1999 codified at 15 U.S.C. § 1125(d).

51.     On information and belief Defendant provided materially false contact information to the domain name registrars used to register the fraudulent domain names.

52.     The American Marks were both famous and distinctive at the time the Fraudulent American Domains were registered.

53.     The Defendant has also caused and will continue to cause great and irreparable injury to American and, unless such acts are restrained by this Court, they will be continued and American will continue to suffer great and irreparable injury.

54.     American has no adequate remedy at law.

55.     By virtue of its aforementioned acts, Defendant has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

## COUNT III
## FEDERAL UNFAIR COMPETITION
### Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

56.     American repeats and realleges each and every allegation of Paragraphs 1 through 36 above, as if fully set forth herein.

57.     Defendant's actions, as described above, constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designates the origin of Defendant's services and related commercial activities as originating from or being approved by American, and thereby constitute a false description or representation used in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this

17

Court, will continue to cause great and irreparable injury to American.

59.     American has no adequate remedy at law.

60.     By virtue of its aforementioned acts, Defendant has violated Section 43(a) ofthe Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## FEDERAL TRADEMARK DILUTION
## Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))

61.     American repeats and realleges each and every allegation of Paragraphs 1 through 36 above, as if fully set forth herein.

62.     The American Marks are famous and highly recognized by the general consuming public, and were famous and highly recognized by the general consuming public before Defendant's first use of its designation and before the actions complained of herein.

63.     Defendant's actions, as described above, dilute and are likely to continue to dilute the distinctiveness of the American Marks.

64.     On information and belief, Defendant engaged in the aforesaid acts with the intent to trade on American's reputation or to cause dilution of the famous American Marks.

65.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to American.

66.     American has no adequate remedy at law.

67.     By virtue of its aforementioned acts, Defendant has violated the FederalTrademark Dilution Act, 15 U.S.C. § 1125(c).

## COUNT V
## FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

68.     American repeats and realleges each and every allegation of Paragraphs 1 through

18

36 above, as if fully set forth herein.

69.     American has a copyright registration for the American Airlines Flight Symbol, Reg. No. VA0002130520/2016-06-03.

70.     American's copyright is valid and enforceable.

71.     Defendant had access to American's copyrighted image because it was published on American's website and on other places on the Internet.

72.     Defendant has directly copied American's copyrighted image and displayed it in his fraudulent emails.

73.     In copying American's work, Defendant has violated the copyright laws of the United States, specifically 17 U.S.C. § 501, et seq.

74.     Defendant has knowingly and willfully infringed upon American's copyright.

75.     By reason and as a direct result of these acts of copyright infringement by Defendant, American has suffered great and irreparable damages, in an amount to be proved at trial.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

76.     American repeats and realleges each and every allegation of Paragraphs 1 through 36 above, as if fully set forth herein.

77.     The Florida Deceptive and Unfair Trade Practices ("FDUTPA"), Florida Statutes § 501.201 *et. seq.*, prohibits unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce. American is a consumer within the meaning of the FDUTPA.

78.     Defendant's conduct is unethical, unconscionable, and deceptive in violation of FDUTPA.

19

79.    Defendant made misrepresentations regarding his relationship with American to jobseekers to purposefully mislead them to their detriment.

80.    Specifically, Defendant knew that use of the American Marks in his statements in emails and domains and subdomains relating to their relationship with American were false and/or misleading. Defendant's false advertising statements and omissions injure American as well as jobseekers.

81.    As a result of Defendant's actions, American has sustained, and will continue to sustain, harm to their valuable goodwill and reputation established in connection with the use and promotion of its American Marks, and other harm. On information and belief, jobseekers in Florida have also been harmed by virtue of being tricked into providing sensitive personal information and payment, which Defendant in turn has used or intends to use to compromise personal identities.

82.    Upon information and belief, Defendant's actions are willful, wanton, and/or in reckless disregard for the rights of American and jobseekers.

83.    Unless enjoined, Defendant's wrongful conduct will continue to cause great, immediate, and irreparable injury to American and jobseekers.

84.    American is without an adequate remedy at law.

85.    By virtue of their aforementioned acts, Defendant has violated FDUTPA.

## COUNT VII
## FRAUD AND MISREPRESENTATION

86.    American repeats and realleges each and every allegation of Paragraphs 1 through 36 above, as if fully set forth herein.

87.    Defendant is orchestrating a fraudulent scheme to trick jobseekers into believing they are submitting a New Hire Form and payment for a Criminal Background Check in order to work at American. Florida recognizes a common law cause of action for fraud.

88.     Defendant falsely represents to jobseekers that he is American or working on behalf of American.

89.     Jobseekers reasonably rely on Defendant's false and misleading statements, omissions and deceptive conduct.

90.     The representations made by Defendant regarding his relationship with American are material, in that jobseekers would not provide personal sensitive information to Defendant if they had known that Defendant was not actually affiliated with American.

91.     As a direct and proximate cause of Defendant's intentional, wanton, willful and malicious misrepresentations, American and jobseekers have suffered damages in the amount to be proved at trial.

## COUNT VIII
## FLORIDA CIVIL CONSPIRACY

92.     American repeats and realleges each and every allegation of Paragraphs 1 through 36 above, as if fully set forth herein.

93.     Defendant is actively conspiring with yet unidentified individuals to accomplish some concerted criminal and unlawful purpose, and some otherwise lawful purpose through unlawful means, to wit: to misappropriate American's intellectual property, to defraud American's potential employees and members of the public seeking work, and cause substantial damage to American, and have committed one or more overt acts in furtherance of and in pursuit of the conspiracy and caused damage to American as a result of such actions.

94.     Defendant's email messages and forms are all created knowingly by Defendant, and in concert with the yet unidentified individuals, for the purpose of enriching themselves at American's (and their potential employees') expense.

95.     Defendant entered into this conspiracy knowingly and willfully.

21

96.     By reason and as a direct result of these acts of conspiracy and infringement by Defendant, American has suffered great and irreparable damages, in an amount to be proved at trial, but well in excess of $75,000 in violation of Florida's civil conspiracy law. The direct and proximate damage to American includes, but is not limited to, damage to American's intellectual property, damage to American's goodwill and reputation, damage to American's relationship with jobseekers who have been defrauded by Defendant, and expenses incurred by American putting a stop to Defendant's fraud. Such conduct as alleged herein constitutes common law conspiracy under Florida law.

## **PRAYER FOR RELIEF**

Plaintiff American prays for the following relief:

(A)   That this Court find that Defendant has unlawfully, and without authorization, infringed upon the American Marks, engaged in cyberpiracy, engaged in unfair competition, and caused trademark dilution, all in violation of the Lanham Act, 15 U.S.C. § 1125, et seq.; infringed on American's registered copyrights in violation of 17 U.S.C. § 501; engaged in false advertising in violation of the FDUTPA; and engaged in conspiracy, and fraud and misrepresentation in violation of the common law of Florida.

(B)   That this Court order Defendant, his officers, agents, servants, employees, attorneys, confederates, and all persons acting for, by, through or under him be permanently enjoined from:

(1)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks;

(2)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in any manner likely to cause others to believe that

ACTIVE 687254882v5

Defendant is associated with, sponsored by, or endorsed by American;

(3)   passing off, inducing, or enabling others to pass off any services related to American which are not authorized by American;

(4)   making any false or misleading statements regarding American or theirservices, or the relationship between American and Defendant;

(5)   committing any other acts calculated to cause consumers or jobseekers to believe that Defendant is connected with American;

(6)   engaging in any activity constituting unfair competition with American;

(7)   engaging in any activity that is likely to dilute the distinctiveness of the American Marks;

(8)   assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (1) through (7);

(C)   That this Court order Verisign, the domain name registry operator for the .com Top Level Domains effectuate transfer of the <aaflydd.com>, <aaapplyhh.com>, <flydiraa.com>, <directaase.com>, <aadirectee.com>, <aadirecthh.com>, <amairll.com>, <OneWorldAA.com>, <aaworldwidedirect.com>, <flyaaow.com>, <aaflydirect.com>, <flyaaww.com>, <aairone.com>, <aaflyone.com>, <airdiroi.com>, <oneworldaae.com>, <oneworldaai.com>, <oneworldaav.com>, <oneaadire.com>, <aaesue.com>, <aalld.com>, <aallf.com>, <aaseria.com>, <aawsou.com>, <airdirio.com>, <amerairoo.com>, <ameriairee.com>, <ameriairss.com>, <amerieo.com>, <amerioe.com>, <appaadir.com>, <appdiraa.com>, <darssuo.com>, <directaace.com>, <directaaci.com>, <aaesuo.com>, <aaserie.com>, <airdiroi.com>,

<ameriairuu.com>, <directaaco.com>, <suwour.com>, <aaflyhr.com>, <aairdir.com>, <onsuoi.com>, <skyaadi.com>, <flydirectaa.com>, <onedirectaae.com> domain names to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C) by changing the registrar of record in the authoritative .com registry database from the current registrar to a registrar designated by Plaintiff.

(D) Monetary relief in an amount to be fixed by the Court in its discretion as just, including:

    (1) All of Defendant's profits gained from Defendant's misappropriation of personal information obtained by Defendant from jobseekers attempting to submit the New Hire Form and payment for the Criminal Background Check;

    (2) Statutory damages, as provided in 15 U.S.C. § 1117(c) and (d), and 17 U.S.C. § 504(c).

    (3) All damages sustained by American as a result of Defendant's acts of trademark infringement, unfair competition, trademark dilution, and fraud including but not limited to ascertainable damages, costs, and attorney fees, including punitive damages;

(E) All other further relief as this Court may deem just and proper.

American requests a trial by jury as to all issues triable to a jury.

Respectfully submitted,

Dated: May 17, 2023          AMERICAN AIRLINES, INC.

By:    */s/ Benjamin G. Greenberg*
        Benjamin Greenberg
        Greenberg Traurig, P.A.
        333 SE 2nd Ave.

24

Miami, FL 33131
Telephone: (305) 579-0860
greenbergb@gtlaw.com

Cameron M. Nelson (*Pro Hac Vice* to be filed)
Molly Carr (*Pro Hac Vice* to be filed)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
nelsonc@gtlaw.com
carrm@gtlaw.com

Nathan J. Muyskens (*Pro Hac Vice* to be filed)
Greenberg Traurig, LLP
2101 L St. NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100
muyskensn@gtlaw.com


Counsel for Plaintiff AMERICAN AIRLINES, INC.

25