UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-CV-21844-ALTONAGA/DAMIAN

AMERICAN AIRLINES, INC.,

        Plaintiff,

vs.

ANTHONY R. SPADA, II,

        Defendant.

_____

**REPORT AND RECOMMENDATION ON PLAINTIFF'S EXPEDITED MOTION TO HOLD DEFENDANT IN CONTEMPT AND FOR SANCTIONS [ECF NO. 30]**

THIS CAUSE is before the Court on Plaintiff, American Airlines, Inc.'s ("Plaintiff" or "American"), Expedited Motion to Hold Defendant in Contempt and for Sanctions [ECF No. 30 (the "Motion")], filed June 13, 2023.[1]

THIS COURT has reviewed the Motion, the Responses and Reply thereto [ECF Nos. 36, 55, 59, 80], the supplemental briefs and exhibits [*e.g.*, ECF Nos. 79, 90], the pertinent portions of the record, and the relevant legal authorities and is otherwise fully advised in the premises. The Court held hearings to address the Motion and take evidence on June 16, 2023, June 21, 2023, and August 9, 2023.

---

[1] This matter is before the undersigned on an Order of Referral entered by the Honorable Cecilia M. Altonaga, Chief United States District Judge, to take all necessary and proper action as required by law [ECF No. 31] and Order referring issues relating to the parties' compliance with the terms of the Temporary Restraining Order and Defendant's Notice of Outstanding Issues. [ECF No. 54]; *see* 28 U.S.C. § 636(b)(1)(A).

# I.    CERTIFICATION OF FACTS

The undersigned certifies the following facts:[2] This case arises from allegations that Defendant, Anthony R. Spada, II ("Spada"), used several aliases to fraudulently hold himself out online as the "Recruitment Director" for Plaintiff, American Airlines. According to the allegations in the Second Amended Complaint, Spada (and others) emailed jobseekers in several cities and informed them they were being hired to work at American. [ECF No. 110]. Spada then allegedly requested the jobseekers provide personal information via a fraudulent "New Hire Form" and pay for a criminal background check using a *PayPal* link provided by Spada prior to their "Orientation." *Id.* Spada allegedly accomplished this fraud by using counterfeit copies of American's federally registered trademarks, unauthorized copies of its copyrighted images, and other images and text associated with American in their emails to the jobseekers. *Id.*

Upon discovery of the above-described fraudulent activity, on May 17, 2023, American filed a complaint in this Court asserting seven counts: trademark infringement and counterfeiting, cyberpiracy, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq*. (Counts I–IV); copyright infringement under 17 U.S.C. § 501 (Count V); false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI); and civil conspiracy under Florida law (Count VII). [ECF No.

---

[2] In civil cases where the parties have not consented to final judgment by a Magistrate Judge, upon commission of an act constituting contempt, "the magistrate judge shall forthwith certify the facts to a district judge" who may then decide whether the act warrants punishment. 28 U.S.C. § 636(e)(6)(B).

1].[3] On that same day, American filed a Motion for *Ex Parte* Application for Seizure Order, Temporary Restraining Order, Order to Show Cause for a Preliminary Injunction, Order for Expedited Discovery, Order Restraining Assets, and Order to Seal.[4] [ECF No 4 (the "Application")].

In the Application, American sought, *inter alia*, leave from the Court to seize Spada's electronic devices reasonably likely to contain information relating to the alleged fraud and to obtain usernames and passwords for all cloud-based accounts located on the devices. *Id.* American also requested the Court enjoin Spada from moving, removing, destroying, or otherwise disposing of his electronic devices, business records, and electronically stored information. *Id.*

On May 18, 2023, Chief United States District Judge Cecilia M. Altonaga entered an Order granting the Application [ECF No. 12 (the "Seizure Order")].[5] Relevant to the Motion now before the Court, the Seizure Order restrained Spada from the following:

> Spada, his agents, servants, confederates, attorneys and any persons acting in concert or participation with them, or having knowledge of this Order by personal

---

[3] Since the initiation of this action, American filed a First Amended Complaint [ECF No. 102], which the Court dismissed without prejudice as a shotgun pleading [ECF No. 109], a Second Amended Complaint [ECF No. 110], which was dismissed in part [ECF No. 134], and a Third Amended Complaint [ECF No. 143], which is the operative pleading. The Second Amended Complaint names three additional Defendants as Spada's co-conspirators and contains an additional claim against Defendants for obtaining property by false personation in violation of Florida law. *Id.* at 26.

[4] In support of the Application, American filed a Sealed Motion for an Order to Seal [ECF No. 3], a Sealed Memorandum of Law in Support of its *Ex Parte* Application [ECF No. 5], and a Declaration of Cameron M. Nelson, executed on May 17, 2023. [ECF No. 6]. These documents and the Seizure Order have since been unsealed. *See* [ECF Nos. 16, 17].

[5] On June 1, 2023, the Court extended the Seizure Order's requirements and restrictions until June 16, 2023, [ECF No. 25], and, on June 15, 2023, the Court again extended the Order through July 7, 2023 [ECF No. 42].

service or otherwise are hereby temporarily restrained from . . . **[m]oving, destroying, or otherwise disposing of any hard drives, thumb drives, mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system, including, email data and website data**, relating to or used for the fraud, counterfeiting, copyright infringement, and other acts complained of herein[.]

*Id.* at 5 (emphasis added). With respect to any seized electronic devices falling within its parameters, the Order provides:

American Airlines shall either image the electronic devices on-site or shall seize the electronic device for forensic imaging and return the devices within four (4) days of the seizure. **To the extent it is necessary to seize information and data in "cloud" accounts such as Gmail, Yahoo Mail, iCloud, DropBox, and WeChat, Spada shall provide login information to those accounts, including two-factor authentication information.** American Airlines' counsel may use that login information solely for the purpose of preserving data in those accounts; once the data has been preserved, American Airlines' counsel shall promptly notify Spada that data preservation is complete and Spada may then change his passwords.

*Id.* at 7 (emphasis added).

On May 23, 2023, pursuant to the Seizure Order, American executed a search of Spada's mother's home in Ellijay, Georgia, and of Spada's boxes located at a Miami Beach UPS Store identified in the Application. *See* [ECF No. 23 ("Report on Seizure, Asset Freeze, and Expedited Discovery")]. Following the seizure, American submitted a Report describing the seizure and identifying outstanding issues. *Id.* In the Report, American reported that it seized three laptops, seventeen phones, one tablet, several thumb drives, several boxes of documents, and large stacks of credit and debit cards. *Id.*; *see also* Mot. at ¶ 3. American also reported several issues it had encountered stemming from Spada's alleged failure to fully cooperate and comply with the Seizure Order, including Spada's failure to return a missing iPhone, the inability to unlock four cellphones, and Spada's failure to provide login information for online accounts. These are discussed below.

4

### A.  The Missing iPhone

One issue raised in American's Report centers on a cellphone used by Spada during American's search of the residence in Ellijay, Georgia. American elaborates on the issue in the Declaration of Cameron Nelson, an attorney for American who was on site during the seizure at the Ellijay residence. [ECF No. 31-1 ("Nelson Declaration")]. According to Mr. Nelson, during the seizure at the Ellijay residence, Spada requested permission to use one of the cellphones that American had tagged for seizure to make calls to attorneys in the Miami area and to his mother. *Id.* at ¶¶ 4–7. Mr. Nelson states that Spada was given permission to use one of the cellphones, specifically, an iPhone, which Spada then used but did not return after making his calls. *Id.* Apparently, Spada initially returned the iPhone but then requested permission to use it again for one more call to his mother. *Id.* Spada was permitted to use the iPhone one last time but, according to Mr. Nelson, Spada did not return the iPhone after he made that last call, and American's agents left the location before realizing Spada had not returned it. *Id.* Shortly after the seizure, one of American's investigators noticed Spada driving by and talking on a cellphone in his car, even though Spada should have turned over all of his phones during the seizure pursuant to the Seizure Order. *Id.* at ¶ 8. The investigator reported this to Mr. Nelson. *Id.*

The following day, Mr. Nelson reminded Spada that he would have to turn that cellphone over for forensic imaging, to which Spada responded that he did not have it. *Id.* at

¶ 10. In his *pro se* Response to the Motion,[6] Spada states that he returned the iPhone after using it and suspects American lost the iPhone. [ECF No. 36 (the "Response") at 1]. At the hearing before the undersigned, Spada testified under oath that he used the iPhone the day of the seizure but denied having the iPhone since then. [ECF No. 79-4 ("Hearing Transcript") at 102:14]. Spada also gave various explanations regarding his possession of what he alleged was a different cellphone and his transfer of his personal cellphone number to a different phone. [Hr'g Tr. at 102:19–107:8, 111:14–19].

In its Supplemental Brief, American reports that Spada's counsel ultimately turned over the missing iPhone the morning of Spada's deposition on June 30, 2023. [ECF No. 79 at 1]. According to American, the iPhone had been wiped clean and showed not a single text message, email, or call in the call log when it was turned over to American. *Id.* American also submitted AT&T call logs and location data for Spada's personal cellphone number that show the phone number was in use after the seizure in and around Ellijay. [ECF No. 79-1]. According to American, this evidence also shows the iPhone was clearly and obviously wiped of all its data prior to being turned over on June 30, 2023. Suppl. Br. at 1.

Spada does not dispute that the iPhone was wiped but argues that the iPhone only contained personal information and conversations that American should not be privy to. [ECF No. 90 at 2].

At the August 9, 2023, hearing, American's computer forensics consultant, Todd Renner, a Senior IT Director at FTI Consulting and an expert in computer forensics, testified

---

[6] Spada submitted two Responses to the Motion, the first was drafted by Spada *pro se* before he retained counsel [ECF No. 36], and the second was drafted by Spada's counsel [ECF No. 55].

that although it is possible that some of the data wiped from the iPhone could be recovered through subpoenas to Apple and AT&T, not all of the data is recoverable and, therefore, that the data is likely gone for good.

### B. The Four Locked Cellphones

The next issue raised by American pertains to four of the cellphones seized from the Ellijay residence. Mot. at ¶ 14. American asserts that it has made multiple attempts to obtain working passcodes for these devices from Spada in order to access the information on the cellphones, but none of the passcodes Spada provided for the phones worked. *Id.*

Spada responds that he has provided all passcodes known to him for the seized cellphones and notes that American successfully accessed ten other cellphones seized from him. [ECF No. 36. at 2]. Spada argues that the cellphones might be permanently locked due to American making too many unsuccessful login attempts. *Id.* He states he is willing to try to unlock the cellphones but argues that doing so would require the phones to be in his possession, which American will not allow based on its suspicion that he would wipe the cellphones once they are in his possession. *Id.*; *see also* [Hr'g Tr. 93:1–16].

At the June 16, 2023, hearing before the undersigned, Spada testified that he only uses one personal cellphone and that the other cellphones seized from the residence—including the four locked cellphones—are not personal phones but are cellphones he purchased with the intention of giving them to his fiancé's friends and family in Colombia. [Hr'g Tr. 92:2–93:5, 94:14–16]. When questioned about a locked Android cellphone with a blue back that was found in his backpack during the seizure, Spada testified that the phone must have been one of the cellphones he planned to sell in Colombia because he has not used an Android cellphone in the last five years. *Id.* at 95:5–13.

In response, American relies on the Declaration of Mr. Renner submitted in support of American's Supplemental Brief. [ECF No. 79-6 ("Second Renner Declaration")]. Mr. Renner declared that at least two of the phones seized from Spada were Android cellphones that had received calls and text messages in 2021. *Id.* at ¶¶ 27–28. American asserts that while this information is not dispositive of the issues before the Court, it demonstrates Spada's ongoing and persistent lack of candor with the Court given that the evidence regarding the phones' use directly contradicts Spada's testimony. Suppl. Br. at 4.

In its Supplemental Brief, American requests the Court table this issue while it awaits responses to requests for production from multiple carriers regarding Spada's cellphones. *Id.* American asserts this information will definitively prove or disprove whether Spada does have the ability to unlock the locked cellphones. *Id.* At the August 9, 2023, hearing, the undersigned inquired whether the pending subpoena returns should hold up determination of the present Motion, and American's counsel confirmed it should not.

### C. Passwords And Two-Factor Authentication

American next raises issues stemming from Spada's alleged failure to provide account passwords and to cooperate in enabling two-factor authentication for those accounts. American avers that its preliminary investigation into the seized electronic devices has uncovered several thousand online accounts, including email, *PayPal*, domain name registrar, online form, *Facebook*, and bank accounts. Mot. at ¶ 7. American alleges that Spada has not provided login information for any of these accounts and that many of these accounts are secured with two-factor authentication which they cannot use because Spada has repeatedly refused to make the second means of authentication available or accessible. *Id.* In his Declaration, Mr. Nelson elaborates on American's attempts to get Spada to comply with the

Seizure Order by providing passwords and making two-factor authentication accessible for his accounts. Nelson Decl. at ¶¶ 16–39]. The Declaration provides exhibits of daily text messages and email exchanges since June 1, 2023, between Mr. Nelson and Spada in which Mr. Nelson attempts to get Spada to cooperate. [ECF No. 30-1 at 11–25]. According to American, despite several hours of calls and meetings between American's agents and Spada, Spada has failed to provide working passwords or to assist with two-factor authentication for his many accounts. Nelson Decl. at ¶ 37.

In response, Spada states that on June 12, 2023, he provided passwords for two Hotmail email addresses. Resp. at 2. He also argues that he should not have to provide his email or cellphone passwords because doing so would violate his Fifth Amendment right against self-incrimination. *See* [ECF No. 55].

At the June 16, 2023, hearing, Spada testified that he vaguely remembers providing passwords he regularly uses for his accounts, that he does not recall being asked by American to provide login information for form accounts, and that he will provide American with information on any online form service he has ever used. [Hr'g Tr. 83:10–84:25].

Mr. Renner also testified at the June 16, 2023, hearing as to the amount and type of accounts found on the seized devices to which Spada has yet to provide access. Mr. Renner testified that the data collected on one of the laptops seized at the Ellijay residence shows that someone used the laptop to access *Namecheap* accounts as recently as April 2023 and *PayPal* accounts as recently as May 2023. [Hr'g Tr. 112:16–118:13]; *see also* [ECF No. 87-19 (Plaintiff's Exhibit 25 from Contempt Hearing)]. Mr. Renner also testified that the internet history on that same laptop indicates that approximately thirty different *Facebook* accounts were accessed on the device since the browser history was last deleted. *Id.* at 119:22–122:20;

*see also* [ECF No. 87-18 (Plaintiff's Exhibit 23 from Contempt Hearing)]. Mr. Renner further testified that the laptop contains folders with thousands of excel sheets downloaded from a "cloud account" on *Dropbox. Id.* at 128:14–131:6. Relevant to the issues in this case, Mr. Renner stated that several of these *Dropbox* folders were further subdivided by airport and that the spreadsheets within these folders contain hundreds to thousands of names, addresses, phone numbers, email addresses, and other personal identifiable information ("PII"). *Id.* at 131:21–132:3, 136:2–12. Thus, American has been requesting Spada provide login information for *Dropbox* accounts. Mr. Renner further testified that the PII in these spreadsheets do not appear to have been manually inputted, but, rather, appear to be results returned from online forms. *Id.* at 137:11–138:8. And, according to Mr. Renner, there are several spreadsheets with variations of the name "Forms" on the seized devices, and these "Forms" spreadsheets contain lists of what appear to be login information for form accounts. *Id.* at 151:25–153:7. For example, one file contains a column titled "*Cognito*," which is an online form builder. *Id.* This column contained multiple email and password combinations below each online form service. *Id.* Although these spreadsheets listed email and password information for what appears to be multiple online form service accounts, Mr. Renner testified that he could not access these accounts because they all require two-factor authentication. *Id*

Mr. Renner testified that based on his investigation, he believes Spada has more than one online storage account (*e.g.*, *Dropbox/One Drive*), that these accounts were accessed as recently as the day the laptop was seized, and that the files on these accounts are related to the fraud alleged in this case. *Id.* at 146:13–147:7. Mr. Renner also testified that based on his review of the data on the laptop, including browser history data and files containing usernames and passwords for *Namecheap* accounts, Spada has one or more *Namecheap* or

*GoDaddy* accounts. *Id.* at 148:1–12. And Mr. Renner testified that it appeared Spada created approximately 3,500 *PayPal* accounts using a variety of email addresses from custom domains from the laptop and that someone would need a domain name registrar account (*e.g.*, *Namecheap* or *GoDaddy*) to create these custom domain email addresses. *Id.* 150:2–151:14.

In its Supplemental Brief filed after the contempt hearings, American asserts that although Spada has produced useable login information for a couple of email accounts, he appears to have done so only after wiping all incriminating data from those accounts. Suppl. Br. at 4. American argues that Spada continues to "evade, dissemble, and deny" when asked for login information for domain registrar accounts, form accounts, financial accounts, document storage accounts, and email accounts. *Id.* at 4–5. American points to what it identifies as one of the most egregious examples of Spada's refusal to provide login information—his refusal to provide information relating to the dozens of *Green Dot* prepaid debit cards seized from the Ellijay residence. *Id.* at 8. According to American, most these cards have username and password information written on them, and the only thing American needs to access them is Spada's assistance in enabling two-factor authentication, which Spada refuses to provide. *Id.*

In Spada's Response to the Supplemental Brief, Spada asserts that he has not evaded any questions relating to login information for his accounts because he has not been asked to provide information as to any specific accounts. [ECF No. 90 at 3]. Spada also argues that he does not own any form accounts and only owns one domain name, *thespadagroup.com*, the password to which Spada states he is willing to provide to American. *Id.* at 4–5. Because he claims to have no other accounts and American will not provide him with the names of specific accounts for which it seeks information (for fear that Spada would delete data within

the accounts), Spada argues that he has provided all the information he can. *Id.* at 4–5. Regarding the *Green Dot* debit cards, Spada states that he does not recall being asked to provide information for prepaid debit cards and that he does not "recall any financial account he owns or operates." [ECF No. 90 at 5].[7]

At the August 9, 2023, hearing, American informed the Court that Spada still had not provided login information nor assistance with two-factor authentication and expressed concern that material data is being destroyed or deleted. Spada indicated he has done all he can to assist and that he has no further information to offer based on American's requests.

### D.  Evidence Of Spoliation, Misrepresentations, And Refusal To Cooperate

As mentioned above, American has indicated that it suspects Spada delayed providing the missing iPhone and the cellphone and account passwords so that he could delete information within those devices and accounts, in violation of the Seizure Order, which prohibits destruction of electronically stored information. *See* Nelson Decl. at ¶ 35.

American provides an illustrative example of Spada's alleged contemptuous conduct. When American asked Spada about a specific account, *brendalassetertsd76@gmail.com*, Spada denied any knowledge of the account. *See* Ex. 2 to [ECF No. 30-1 ("First Renner Declaration")] at ¶ 18. American did not disclose to Spada that it had already recovered the password for this email address. *Id.* After American's counsel asked Spada about the email address, American attempted to login to the account and found that the password had been

---

[7] Counsel for Spada states that he was not able to locate the exhibit containing the *Green Dot* cards referenced in American's Supplemental Brief. [ECF No. 90 at 5]. The undersigned notes that [ECF No. 79-5], which is Exhibit E to American's Supplemental Brief, provides front and back images for approximately thirty-nine *Green Dot* prepaid debit cards, the majority of which have handwritten information on them. *See* [ECF No. 79-5].

changed within the last hour (after Spada spoke to American's attorney about the account). *Id.* at ¶ 18. American argues that Spada must have changed the password immediately after learning that American knew about the account. *Id.*

Moreover, according to American, Spada's denial of knowledge of thousands of accounts linked to his computer[8] is not credible and evidences his refusal to cooperate. For example, Spada denies knowledge of any *Dropbox* accounts, despite having thousands of files in *Dropbox* folders on his laptop. *Id.* at ¶ 20. Likewise, Spada denies having any *Namecheap* accounts, despite files on his laptop containing username and password information for several *Namecheap* accounts (that cannot be accessed without two-factor authentication). *Id.* at ¶ 21. And Spada's laptop similarly contains lists of accounts with several online form companies—companies that Spada claims to be unfamiliar with. *Id.* at ¶¶ 21–22. Further, the other electronic devices seized from the Ellijay residence contain information and invoices associated with thousands of email addresses of which he denies knowledge. *Id.* at ¶¶ 23–30.

In the Second Renner Declaration, Mr. Renner provides another example of Spada allegedly destroying evidence. [ECF No. 79-6]. Mr. Renner states that during the seizure at the Ellijay residence, American seized a laptop that contained 5,395 emails sent to and received by the email address *anthony@thespadagroup.com* (the "Local Emails"). Based on the metadata of the seized laptop, it appears these Local Emails were sent between July 17, 2017, and May 12, 2023. *Id.* Notably, 5,356 of these Local Emails are dated on or after April 1, 2022. *Id.* at ¶¶ 5, 8. Although American had information about the email address from the

---

[8] The undersigned notes that Spada has not agreed or admitted that the laptop computer, a Samsung, that American alleges is Spada's computer actually is his computer. The undersigned refers to the Samsung laptop as Spada's computer based on the uncontroverted evidence presented by American demonstrating that the laptop was used by Spada.

Local Emails and metadata on the seized laptop, Spada did not provide the login information for *anthony@thespadagroup.com* until June 22, 2023, the day after the second hearing before the undersigned during which the undersigned reminded Spada of his obligation to provide all of his account login information. *Id.* at ¶¶ 6–7. Using the login information provided by Spada, FTI accessed the *anthony@thespadagroup.com* account and collected the account data available from the server (the "Server Emails"). *Id.* In contrast to the 5,395 emails found on the seized laptop, the Server Emails only contained 1,730 records, including non-email items such as contacts and calendar entries. In particular, only 362 of the Server Emails are dated on or after April 1, 2022, as compared to the 5,356 emails from that timeframe found on the seized laptop. *Id.* at ¶ 8. Moreover, 298 of the 362 Server Emails were dated after May 20, 2023, the day of the seizure. *Id.* According to Mr. Renner, the discrepancy between the email data found on the laptop seized on May 23, 2023, and the email data collected from the server on June 22, 2023, indicates someone deleted data associated with the *anthony@thespadagroup.com* account after the date of the seizure, in violation of the Seizure Order. *Id.* at ¶ 11.

Spada has not offered any evidence to rebut Mr. Renner's declarations on this issue.

## II.     APPLICABLE LEGAL STANDARD

"Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained." *Bank of Am., N.A. v. United Cities Grp., Inc.*, No. 08–21917–CIV, 2009 WL 855987, at *4 (S.D. Fla. Mar. 31, 2009) (Gold, J.) (citation omitted). The party seeking civil contempt must show by clear and convincing evidence that the alleged contemnor violated the court's prior orders. *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (citing *U.S.A v. Roberts*, 858 F.2d 698 (11th

Cir. 1988). "This requires proving that (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015) (Hurley, J.) (quoting *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)).

To meet the initial burden for a finding of civil contempt, a moving party need only show that alleged contemnor failed to comply with the court's order. *Van De Velde NV v. Felder*, 15-24096-CIV, 2017 WL 8895345, at *2 (S.D. Fla. May 25, 2017) (Goodman, J.) (*citing United States v. Rylander*, 460 U.S. 752, 755 (1983)), *report and recommendation adopted*, 2017 WL 8895340 (S.D. Fla. June 16, 2017). Thereafter, the burden shifts to the alleged contemnor to produce detailed evidence explaining why it cannot comply, which requires more than a mere assertion of inability to comply. *Roberts*, 858 F.2d at 701. The alleged contemnor must show that it has, in good faith, made all reasonable efforts to comply with the order. *Id.*; *Chairs*, 143 F.3d at 1436. If a sufficient showing is made by the contemnor, the burden then shifts back to the party seeking to show contempt to prove the alleged contemnor's ability to comply with the court's order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

Once a party has been held in contempt, the district court may issue sanctions that are remedial in nature and designed to obtain compliance with a court order. *See Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, No. 10-62115-CIV, 2012 WL 4936054, at *5 (S.D. Fla. Oct. 17, 2012) (Altonaga, J.) (citation omitted). Alternatively, the court my order sanctions to compensate for damages sustained as a result of noncompliance. *Id.*

### III.  FINDINGS

With the foregoing in mind, the undersigned considers the evidence submitted by the parties regarding whether Spada should be held in contempt. American must show by clear and convincing evidence that Spada violated the Seizure Order by proving that (1) the Order was valid and lawful; (2) the Order was clear and unambiguous; and (3) that Spada had the ability to comply with the order. *See Greenberg,* 105 F. Supp. 3d at 1345 (quoting *Ga. Power Co.*, 484 F.3d at 1291). Based on the foregoing certified facts, for the reasons that follow, the undersigned finds that American has satisfied its burden here.

#### A.  The Court's Order Is Valid And Lawful

The undersigned finds that the Seizure Order is a lawful and valid order. Neither American nor Spada challenges the validity or legality of the Order. *See, e.g.*, *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (observing allegedly violated order was valid and lawful where "[n]either party challenge[d] the validity of the [subject order]").

#### B.  The Court's Order Is Clear And Unambiguous

As set forth above, the Seizure Order enjoins Spada from "[m]oving, destroying, or otherwise disposing of . . . mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system, including, email data and website data, relating to or used for the fraud, counterfeiting, copyright infringement, and other acts complained of herein[.]" Seizure Order at 5. Additionally, the Seizure Order expressly requires Spada, "[t]o the extent it is necessary to seize information and data in 'cloud' accounts such as Gmail, Yahoo Mail, iCloud, DropBox, and WeChat," to "provide login information to those accounts, including two-factor authentication information." *Id.* at 7.

16

Spada has not argued that the Order is either unclear or ambiguous. The undersigned finds that the Order is clear and unambiguous, leaving no room for confusion regarding Spada's obligations.[9] *See* 17 Am. Jur. 2d *Contempt* § 140 (2023); *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296–97 (11th Cir. 2002) (analyzing whether terms of order were "clear and unambiguous").

### C. *Spada Had And Has The Ability To Comply With The Seizure Order*

The evidence presented by American and at the hearings before the undersigned shows that Spada had the ability to comply with the Seizure Order. *Cf. Cohen v. Maher*, No. 6:17-MC-56-ORL-41DCI, 2018 WL 7287199, at *1 (M.D. Fla. Nov. 7, 2018) (finding no civil contempt in absence of evidence establishing alleged violator had ability to comply with order).

#### 1. *The Requirement That Spada Not Move, Destroy, Or Dispose Of Devices Or Data*

The Seizure Order restrained Spada and "his agents, servants, confederates, attorneys and any persons acting in concert or participation with them" from "[m]oving, destroying, or otherwise disposing of . . . mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system, including, email data and website data, relating to or used for the fraud." Seizure Order at 5. To comply with the Seizure Order, Spada only had to refrain from moving or otherwise disposing of "mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system" related to the alleged fraud. Spada moved at least one mobile device (the missing iPhone) in contravention of the Order. Although he initially denied taking the phone, he ultimately returned it without explanation and without claiming he could not have taken it. And, when the missing iPhone was returned,

---

[9] As discussed above, Spada does not challenge the validity or legality of the Seizure Order.

it was apparent that Spada deleted data from it, which he neither denies nor claims he was unable to prevent. Nor did Spada present evidence or argument that he could not have prevented the deletion of data from other devices and accounts, including the Server Emails discussed above, as alleged by American. Therefore, the undersigned finds that American has shown that Spada had the ability to comply with the Order's requirement that he not dispose of or destroy devices or data.

### 2. *The Requirement That Spada Provide Login Information*

To assist American in the preservation of data, the Seizure Order required Spada to provide "login information, ***including two-factor authentication***" for all "cloud" accounts (*e.g., Gmail*, *iCloud*, *Dropbox*). *Id.* at 7 (emphasis added).

Spada argues that he has no domain name register accounts (except for *thespadagroup.com*, for which he already provided the password) and that American has not provided sufficient evidence showing that Spada owns other domain registrar accounts, form accounts, financial accounts, online storage accounts, or social media accounts to which he has the ability to provide access. [ECF No. 90]. At the August 9, 2023, hearing, Spada, through counsel, argued that he did not recognize the second factor on the two-factor authentication attempts made by American, so he did not have access to be able to help. He also argued that American did not identify other accounts they wanted access to but instead told him to identify accounts, which he was unable to do.

American has provided substantial evidence demonstrating that multiple online accounts, including email, *PayPal*, domain name registrar, online form, online storage, *Facebook*, and bank accounts, were accessed from devices seized at the Ellijay residence, including from a laptop that American has shown was used by Spada, and that these accounts

were accessed as recently as the day of the seizure at the Ellijay residence. [Hr'g Tr. 112:16–118:13, 119:22–122:20, 128:14–131:6, 137:11–138:8, 151:25–153:7]; *see also* [ECF Nos. 87-18, 87-19].

Having considered the evidence presented at the hearings and submitted by the parties, the undersigned finds that American has established by clear and convincing evidence that the Samsung laptop seized from the Ellijay residence was Spada's or, at least, was used by Spada, that emails were sent using that laptop and using domains other than the *thespadagroup* domain acknowledged by Spada, that *Facebook* was accessed using that laptop, and that numerous other accounts were accessed using that laptop. American also presented clear and convincing evidence that Spada was the owner of many accounts he denies owning, including bank statements reflecting payments to those services. The undersigned is also persuaded by the evidence that Spada was able to access accounts in order to delete data.

The undersigned also finds that Spada's claims of lack of ownership of and access to any of the accounts identified by American lack credibility. While he may not own or have login information for all of the devices and accounts identified by American, American has presented unrebutted evidence that he does have access to and control over many. Therefore, the undersigned finds that American has established that Spada could substantially comply with the Seizure Order by providing the login information for at least some of the alleged *hundreds* of accounts found on and accessed from the seized devices.

The undersigned also finds that American has provided clear and convincing evidence that Spada had the ability to comply with the Seizure Order by providing two-factor authentication for a substantial number of the accounts associated with the seized materials and devices. At a minimum, Spada should be able to comply and provide two-factor

authentication for the *Green Dot* prepaid cards, which were found at the Ellijay residence with username and password information handwritten on them, and for the online accounts whose login and password information were listed in the multiple "Forms" excel sheets found on the seized devices. As American has demonstrated, at least some of the accounts for which two-factor authentication was attempted sent the authentication request to accounts Spada has control over, including the *thespadagroup.com* account. And the undersigned again finds that Spada's claims that he could not access any of the authentication accounts are not credible.

Thus, the undersigned finds that American has established by clear and convincing evidence that Spada had the ability to comply at least in part with the Seizure Order.[10]

### D.  Spada's Violations Of The Seizure Order

American provides evidence of several instances in which Spada violated or failed to comply with the requirements of the Seizure Order. Specifically, American has shown that Spada failed to comply with the Order by moving electronic devices, by disposing of data, and by failing to provide login information and two-factor authentication for accounts controlled by him.

---

[10] Regarding the four cellphones seized from the Ellijay residence that Spada provided incorrect passcodes for, Spada testified that the cellphones at issue are not personal phones and that he has provided all known passcodes for seized cellphones. [Hr'g Tr. 92:2–93:5, 94:14–16]; [ECF No. 36. at 2]. Spada also states he is willing to try to unlock the cellphones. [ECF No. 36. at 2]. American has not provided adequate evidence that contradicts Spada's testimony regarding these cellphones, and American acknowledged that it is not willing to let Spada attempt to unlock the cellphones himself out of concern he may cause the permanent deletion of the information on the phones. Thus, without more, the undersigned cannot make a determination at this time as to whether Spada can comply with the Seizure Order with regard to the four locked cellphones.

##### *1. Failure To Comply With The Seizure Order By Moving And Disposing Of Evidence.*

American has shown two clear instances of Spada "[m]oving, destroying, or otherwise disposing of . . . mobile devices . . . or data stored on a computer, server, or in a cloud-based storage system, including, email data and website data," in violation of the Seizure Order. Seizure Order at 5.

First, American presented clear and convincing evidence that Spada kept the missing iPhone after the seizure at the Ellijay residence, in violation of the Court's Order commanding him to not "[m]ov[e]. . . any mobile devices[.]" *Id.* Spada's denial of this is not credible, especially in light of the fact that he ultimately did return the phone to American. American established that when Spada finally delivered the iPhone to American thirty-eight days after it went missing, the iPhone was wiped clean of all information, including text messages, emails, and calls in the call log, in violation of the Seizure Order's requirement that Spada not "destroy[] or otherwise dispos[e] of . . . mobile device[]. . . data[.]" *Id.* Spada does not dispute that the iPhone was wiped of its data [ECF No. 90 at 2], and, indeed, he cannot dispute that the iPhone was wiped because it would have been impossible for the iPhone to show no calls in its call log in light of Spada's testimony that he used that same iPhone the day of the seizure to make calls. [Hr'g. Tr. 102:1–18].

American also provided clear and convincing evidence that Spada deleted emails and other stored data from the email account *anthony@thespadagroup.com* before providing the account's login information to American, in violation of the Seizure Order's requirement that Spada not "destroy[] or otherwise dispos[e] of . . . data stored on a computer, server, or in a cloud-based storage system**, including, email data** and website data[.]" Seizure Order at 5 (emphasis added). The undersigned is also persuaded by evidence presented by American that

21

the password for an email account was changed immediately after American identified the account to Spada.

### 2. Failure To Comply With The Seizure Order By Not Providing Login Information and Two-Factor Authentication.

American also presented clear and convincing evidence that Spada failed to comply with the Seizure Order by not providing login information and two-factor authentication for various accounts owned and control by Spada. The Seizure Order requires Spada to "provide login information . . . including two-factor authentication information" to the extent necessary to "seize information and data in 'cloud' accounts such as Gmail, Yahoo Mail, iCloud, DropBox, and WeChat[.]" *Id.* at 7.

As discussed above, American has demonstrated that Spada has multiple, if not hundreds of online accounts. Spada's denial of knowledge of accounts associated with, found on, and accessed from his computer is not credible in light of the evidence presented by American showing that seized devices, including the Samsung laptop used by Spada, had recently accessed *Dropbox*, *Namecheap*, *PayPal*, *Facebook*, and online form company accounts and had sent emails from accounts associated with domains other than the *thespadagroup.com* account. Further, Spada's seized electronic devices contain information and invoices associated with thousands of online accounts and email addresses. And bank records indicate Spada paid for numerous online accounts and services. To date, Spada has only provided the login information for a handful of email accounts while refusing to provide login information or to assist with two-factor authentication for many others he controls.

The undersigned is not persuaded by Spada's claim that he has complied with the Seizure Order because American has not specified accounts for which it seeks login information.

The Seizure Order requires Spada to provide the login information for all "cloud" accounts found on the seized electronic devices. *See* Seizure Order at 7. The Order does not place the onus upon either party to request or provide the specific account and login information. However, the credible evidence presented shows that Spada has tens, if not hundreds, of accounts for which he has not provided either login information or two-factor authentication. As discussed above, one of the most egregious examples of Spada's refusal to provide two-factor authentication is the fact that Spada claims to have no knowledge of *Green Dot* prepaid debit cards, despite American seizing dozens of *Green Dot* cards from the Ellijay residence with *handwritten* username and password information on them, all of which require two-factor authentication. The undersigned is also persuaded by evidence presented by American that Spada intentionally evaded American when it sought assistance with two-factor authentication of accounts while on *Zoom* calls with American's representatives.

Moreover, American has demonstrated good reason not to identify accounts to Spada in light of evidence that Spada changed the password to the *brendalassetertsd76@gmail.com* account immediately after American requested its login information, deleted emails from the *anthony@thespadagroup.com* account before providing its login information to American, and wiped the missing iPhone of its data before handing it over to American.

Based on the above-described evidence, the undersigned finds American has satisfied its initial burden to show that Spada failed to comply with a court order, and, as such, the burden shifted to Spada to show why he should not be found in contempt for failure to comply with the Seizure Order. *See Roberts*, 858 F.2d at 701.

### E.  *Spada Failed To Demonstrate That He Made Reasonable Efforts To Comply*

In light of American having satisfied its initial burden, the burden shifted to Spada to produce detailed evidence explaining why he could not comply with the Seizure Order. To do so, Spada must show that he has, in good faith, made all reasonable efforts to comply with the Order. *See Chairs*, 143 F.3d at 1436.

Spada was given the opportunity at the June 16, 2023, hearing to explain why he should not be found in contempt. At the hearing, Spada testified, *inter alia*, that he "vaguely" remembers providing potential passwords for accounts to American and that he would continue to cooperate with American. [Hr'g Tr. 83:10–84:25]. At the same hearing, Spada also testified that he did not have the missing iPhone and that he has not used an Android cellphone in five years [*id.* at 92:2–94:16, 102:14], statements that were both later proven false.

Between the June 16, 2023, hearing and the August 9, 2023, hearing, both parties had the opportunity to present additional evidence regarding the present Motion. As discussed above, American presented evidence that Spada did not cooperate after the June hearing and provided no further information for logins or two-factor authentication for his devices and accounts.

Other than his testimony at the June 16, 2023, hearing, Spada has not offered any evidence showing that he has made reasonable efforts to comply with the Seizure Order. Indeed, Spada continues to assert that he does not have any other email, *PayPal*, domain name registrar, online form, online storage, *Facebook*, bank, or financial accounts, despite substantial evidence to the contrary.

Based on the evidence before the Court, the undersigned finds Spada failed to demonstrate that he has made "all reasonable efforts" to comply with the Court's Seizure

Order. Therefore, the burden does not shift back to American,[11] and Spada should be found in civil contempt for failure to comply with the Court's Seizure Order.

## IV.    RECOMMENDATION

Based on the certified facts and reasons set forth above, the undersigned finds American has established by clear and convincing evidence that Spada violated the Court's May 18, 2023, Order. Accordingly, the undersigned respectfully RECOMMENDS that the Court schedule a hearing directing Spada to show cause why he should not be found in contempt of Court for failing to comply with the Seizure Order. Upon a finding of civil contempt, the undersigned respectfully recommends that the Court GRANT American's Expedited Motion to Hold Defendant in Contempt and for Sanctions [ECF No. 30] and award American's reasonable expenses incurred in its efforts to compel Spada's compliance with the Order and in making the Motion, including attorney's fees, as a sanction for Spada's failures to comply with the Court's Seizure Order. *See Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 n.8 (11th Cir. 1986) ("A court has broad discretion in fashioning a contempt sanction."). The undersigned also recommends the Court impose a daily coercive fine against Spada as a sanction for his continued non-compliance until Spada purges himself of his contempt and provides access to specified online accounts within his control. *Id.*

---

[11] Even if Spada had satisfied his burden and the burden shifted back to American, the undersigned finds that American presented substantial evidence to demonstrate that Spada had the ability to comply with the Seizure Order, including evidence Spada was in possession of and refused to return the missing iPhone and had control of the *anthony@thespadagroup.com* email account when data within this device and account was deleted.

The parties will have **seven (7) days**[12] from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, Chief United States District Judge. Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 22[th] day of August, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Cecilia M. Altonaga, *Chief United States District Judge*
Counsel of Record

---

[12] Counsel for the parties stated at the August 9, 2023, hearing that they do not object to the undersigned shortening the time to file objections to seven days.