**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 23-CV-21844-ALTONAGA/DAMIAN**

AMERICAN AIRLINES, INC.,

     Plaintiff,

vs.

ANTHONY R. SPADA, II, et al.,

     Defendant.

_____

**REPORT AND RECOMMENDATION ON PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 43]**

THIS CAUSE is before the Court on Plaintiff, American Airlines, Inc.'s ("Plaintiff" or "American"), Motion for Preliminary Injunction [ECF No. 43 (the "Motion")], filed June 15, 2023.[1]

The undersigned has reviewed the Motion, the Responses and Replies thereto [ECF Nos. 76, 93, 99], American's Amended Proposed Order [ECF No. 96], the pertinent portions of the record, and the relevant legal authorities and is otherwise fully advised in the premises. The undersigned has held several hearings in this case, including a hearing on August 9, 2023, to address the Motion and take evidence.

On May 24, 2023, the Court entered a Sealed Order granting American's *Ex Parte* Motion for Seizure Order, Temporary Restraining Order, Order to Show Cause for Preliminary Injunction, Order for Expedited Discovery, and Order Restraining Assets and

_____

[1] This matter is before the undersigned on an Order of Referral entered by the Honorable Cecilia M. Altonaga, Chief United States District Judge, referring Plaintiff's Motion for Preliminary Injunction to the undersigned to take all necessary and proper action as required by law [ECF No. 98]. *See* 28 U.S.C. § 636(b)(1)(A).

Order to Seal. [ECF No. 12 (the "TRO")]. American now seeks issuance of a preliminary injunction enjoining Defendant, Anthony Spada, II ("Spada"), generally, from engaging in any activity involving the use of American's trademarks and committing any acts purportedly on behalf of or in competition with American; from moving, destroying or otherwise disposing of electronic evidence of the acts at issue in the instant action; from removing, destroying, or otherwise disposing of business records and documents related to the acts at issue in the instant action; and from using any counterfeit domains, websites, and email accounts bearing American Marks during the pendency of the action. *See* [ECF No. 96].

For the reasons set forth below, the undersigned recommends that the Motion be granted and that the injunction issue.

## I.   INTRODUCTION AND BACKGROUND

This case arises from American's allegations that Spada used several aliases to fraudulently hold himself out online as the "Recruitment Director" for American. According to the allegations in the Third Amended Complaint, Spada (and others) emailed jobseekers in several cities and informed them they were being hired to work at American. [ECF No. 143 ("Third Am. Compl.")]. Spada and his affiliates then allegedly requested the jobseekers provide personal information via a fraudulent "New Hire Form" and pay for a Criminal Background Check using a *PayPal* link provided by Spada prior to their "Orientation." *Id.* Spada allegedly accomplished this fraud by using counterfeit copies of American's federally registered trademarks (the "American Marks"), unauthorized copies of its copyrighted images, and other images and text associated with American in their emails to the jobseekers. *Id.*

### A. The Complaint

Upon discovery of the above-described fraudulent activity, on May 17, 2023, American filed a complaint in this Court asserting seven counts: trademark infringement and counterfeiting, cyberpiracy, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, *et seq.* (Counts I–IV); copyright infringement under 17 U.S.C. § 501 (Count V); false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI); and civil conspiracy under Florida law (Count VII). [ECF No. 1].[2] On that same day, American filed a Motion for *Ex Parte* Application for Seizure Order, Temporary Restraining Order, Order to Show Cause for a Preliminary Injunction, Order for Expedited Discovery, Order Restraining Assets, and Order to Seal.[3] [ECF No. 4 (the "TRO Application")].

### B. The Temporary Restraining Order

In the TRO Application, American sought, *inter alia*, leave from the Court to seize Spada's electronic devices reasonably likely to contain information relating to the alleged fraud and to obtain usernames and passwords for all cloud-based accounts located on the

---

[2] Since the initiation of this action, American filed a First Amended Complaint [ECF No. 102], which the Court dismissed without prejudice as a shotgun pleading [ECF No. 109], a Second Amended Complaint [ECF No. 110], which was dismissed in part [ECF No. 134], and a Third Amended Complaint [ECF No. 143], which is the operative pleading. The Third Amended Complaint names three additional Defendants as Spada's co-conspirators and contains an additional claim against Defendants for obtaining property by false personation in violation of Florida law. *Id.*

[3] In support of the Application, American filed a Sealed Motion for an Order to Seal [ECF No. 3], a Sealed Memorandum of Law in Support of its *Ex Parte* Application [ECF No. 5], and a Declaration of Cameron M. Nelson, executed on May 17, 2023 [ECF No. 6]. These documents and the TRO have since been unsealed. *See* [ECF Nos. 16, 17].

devices. *Id.* American also requested the Court enjoin Spada from moving, removing, destroying, or otherwise disposing of his electronic devices, business records, and electronically stored information. *Id.*

On May 18, 2023, Chief United States District Judge Cecilia M. Altonaga granted American's TRO Application and entered the TRO. [ECF No. 12].[4] On May 23, 2023, pursuant to the TRO, American executed a search of Spada's mother's home in Ellijay, Georgia, and of Spada's boxes located at a Miami Beach UPS Store identified in the Application. *See* ECF No. 23 ("Report on Seizure, Asset Freeze, and Expedited Discovery").

### C. *American's Motion For Preliminary Injunction And Spada's Response*

American now seeks a preliminary injunction to continue the restraints on Spada and his assets during the pendency of these proceedings. Spada contends that there is insufficient evidence that he used American Marks or confusingly similar marks to defraud jobseekers, and he submitted a sworn Declaration declaring that he, in fact, has not done so. *See* Response and ECF No. 76-1 ("Spada Declaration"). Spada further claims that American has not provided sufficient evidence establishing that Spada owns or operates fake domain names or email addresses. Response at 4. And Spada argues that the only evidence offered by American is the Declaration of Cameron Nelson, counsel for American, and that the Declaration is insufficient to carry American's burden. *Id.* As Spada argues, even if there is evidence that Spada owns *PayPal* accounts, there is no evidence linking such ownership to the fraudulent

---

[4] On June 1, 2023, the Court extended the Seizure Order's requirements and restrictions until June 16, 2023, [ECF No. 25], and, on June 15, 2023, the Court again extended the Order through July 7, 2023 [ECF No. 42].

use of American Marks. Again, in his Declaration, Spada denies engaging in any of the conduct alleged by American. Response at 6; Spada Declaration.

American submitted a Reply in Support of the Motion. [ECF No. 93]. In the Reply, American Points to specific evidence, including letters found on Spada's computer that included American Marks and were identical to letters received by victims of the alleged fraud. American points to other evidence found on Spada's laptop and in the Ellijay residence, which demonstrates the computer was used to perpetrate the alleged scheme, as well as evidence that the computer was used by Spada.[5] *Id.*

Spada submitted a Sur-Reply, again arguing American has offered insufficient evidence to establish Spada's involvement in the alleged scheme and use of American Marks. [ECF No. 99].

Spada has informed the Court that he does not dispute the validity of the American Marks. In addition, Defendant Spada consents and agrees that he will not use, reproduce, or make reproductions or colorable imitations of the American Marks or hold himself out as an employee or representative of American. Spada argues, however, that the preliminary injunction should be denied because American has not demonstrated a reasonable likelihood of success on the merits. *See* ECF. No. 76 (the "Response").

## II.   FINDINGS OF FACT

Based on the evidence presented, the undersigned finds as follows:

---

[5] Spada invoked the Fifth Amendment as to whether the laptop at issue was his. [ECF No. 93 at 3]. American offered evidence demonstrating it was and also argued it is entitled to an adverse inference due to Spada's invocation of the Fifth Amendment. *Id.*

### A. The American Marks

American is the world's largest air carrier and has been in operation for more than 90 years. American has developed global name-recognition and goodwill and has become a household name. It has continuously used the trade name "American Airlines" and numerous trademarks and service marks, such as AA and AMERICAN AIRLINES, for decades.

Over the past several decades, American has used the AA and AMERICAN AIRLINES marks, both alone and in combination with other words and designs—in connection with transportation services, travel agency services, and travel reservation services, among numerous other goods and services, in interstate commerce. To enhance and give public notice of its trademark rights, American has obtained numerous federal trademark registrations for its trademarks, the overwhelming majority of which have been in continuous use for more than five years and have thus become "incontestable" pursuant to 15 U.S.C. § 1115(b).

American's trademark registrations include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| AMERICAN AIRLINES | 4939082 | April 19, 2016 | (Int'l Class: 35) Sales promotion; promoting the goods and services of others by means of a loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private club membership; promoting the goods and services of others by |

| | | | means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise<br><br>(Int'l Class: 37)<br>Repair and maintenance of aircraft, vehicles, aircraft-related facilities, baggage-related facilities, and air travel-related facilities; refueling of aircraft and land vehicles; ground support services in the field of air transportation, namely, aircraft de-icing services, aircraft interior and exterior cleaning, and sanitation<br><br>(Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing air transportation reservation services for others, providing vehicle reservation services for others, providing cruise reservation services for others, and providing vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network; providing lounge facilities, namely, airport services featuring transit lounge facilities for passenger relaxation and also including shower facilities |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | (Int'l Class: 41)<br>Providing online electronic publications, namely, online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing inflight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of an inflight entertainment system; providing inflight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of a personal computer or tablet<br><br>(Int'l Class: 43)<br>Food and drink catering; providing food and beverage services in conjunction with providing facilities in the form of a private club for conducting business, meetings and conferences; providing conference room facilities, food and beverage lounge facilities, and amenities, namely, food, drink, catering, and restaurant; providing hotel reservation and coordination services |

| | | | |
|---|---|---|---|
| | | | for others by means of a global computer network; travel agency services, namely, making reservations and booking for temporary lodging; entertainment services, namely, providing a general purpose arena facility for sports, entertainment, trade shows, exhibitions and conventions |
| **AMERICAN AIRLINES** | 5279167 | September 5, 2017 | (Int'l Class: 09) Computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices, namely, software for tracking and redeeming loyalty program awards; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status<br><br>(Int'l Class 38) Providing internet access |
| **AMERICAN AIRLINES** | 5592865 | October 30, 2018 | (Int'l Class 36) Issuance of credit cards through a licensee |
| **AMERICAN AIRLINES** | 5573314 | October 2, 2018 | (Int'l Class 25) Clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class 28) Toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes; playing cards |

| | | | |
|---|---|---|---|
| | | | (Int'l Class 36)<br>Banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; issuance of credit cards through a licensee |
| Design Only<br> | 4449061 | December 10, 2013 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation transportation reservation services by means of a global computer network; providing information in the field of travel by means of a global computer network |
| Design Only<br> | 5559145 | September 11, 2018 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support |

| | | | services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; airport ramp services; transporting aircraft at airport; providing aircraft parking and storage; aircraft towing; transportation services, namely, checking of baggage; airport services featuring transit lounge facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities; air passenger wheel-chair services at airport; leasing of aircraft; leasing of components of aircraft; leasing of aircraft engines; transporting of aircraft engines for others; airport services featuring transit lounge facilities for passengers |
|---|---|---|---|
| AA | 514292 | August 23, 1949 | (Int'l Class 39)<br>Air transport of passengers and freight |

The above trademark registrations are valid and subsisting. Defendants do not oppose or dispute the validity of the American Marks.

American has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting its federally registered trademarks. The American Marks are widely recognized by consumers, the public, and the trade.

The widespread fame, outstanding reputation, and significant goodwill associated with the American brand have made the American Marks invaluable assets to American.

Neither Anthony R. Spada, II, nor any of the named Defendants are now, nor have they ever been, authorized or licensed to use, reproduce, or make reproductions or colorable imitations of the American Marks.

### B.  Defendant's Unlawful Activities

In email messages sent to jobseekers, Spada and others associated with him fraudulently hold themselves out as employees and representatives of American. The fraudulent email messages purport to offer the victims positions with American and to officially invite the victims to attend a New Hire Orientation. The fraudulent email messages then tell victims to fill out a New Hire Form that authorizes American to perform a Criminal History Background Check, which is required pursuant to Federal 1aw (49 CFR l544.229), and then pay a fee for the Criminal History Background Check. The email messages direct victims to access the New Hire Form at another domain, which then redirects victims to online forms created by Spada and his associates on various online form websites, including *JotForm.com*, *CognitoForms.com*, *AidaForm.com*, and *Fonnstack.com*. Spada and his affiliates use these forms to collect the victims' personal information. After victims complete the New Hire Form, they are directed to a *PayPal* page where they are instructed to pay approximately $100 purportedly for a Criminal History Background Check.

Spada and others accomplish this fraud by using counterfeits of American's federally registered trademarks, unauthorized copies of American's copyrighted images, and other images and text associated with American on the email messages. The email messages used in furtherance of the above-described acts look like legitimate American email messages because Spada and his associates use the term "American Airlines" repeatedly throughout

the messages, and the messages are sent from email addresses that are based on domain names that are similar to or incorporate American's well known "American Airlines" and "AA" marks. The email addresses include the following: *george.wilson@flydiraa.com*, *george.wilson@wdirectaase.com*, *george.wilson@waadirectee.com*, *george.wilson@waadirecthh.com*, *george.wilson@wamairll.com*, *george.wilson@woneWorldAA.com*, *george.wilson@tlyaaow.com*, *george.wilson@aaiydirect.com*, *peter.hacington@iydirectaa.com*, *peter.hacington@oneworldaae.com*, *peter.haaingon@oneaadire.com*, *george.wilson@skyaadi.com*, *peter.harrington@wairdiroi.com*, *peter.harrington@wdirectaaci.com*, and *peter.hacington@onedirectae.com*. The links to the New Hire Form likewise use domain names that incorporate or are similar to American's "AA" mark, including *aaflydd.com* and *aaapplyhh.com*.

The combined fraudulent emails and forms deceive jobseekers into believing they are submitting information and payment to American, when in fact they are sending such information and payment to fraudsters who created the emails and forms. American never receives the information the jobseekers provide in the fraudulent forms or the payments submitted through *PayPal*.

Though American does not yet know every detail of Spada's involvement in the scheme, the evidence submitted by American demonstrates that Spada is a beneficiary of the fraudulent scheme. [ECF No. 6 ("Nelson Declaration") at ¶ 23]. The evidence establishes Spada has created or directed the creation of more than one hundred *PayPal* accounts. *Id.* at ¶ 24. For each of these *PayPal* accounts, Spada provided a false name, false address, and false company name. *Id.* at ¶ 26. Spada also provided an email address, a routing number, and an account number at a U.S. bank ("*PayPal*-linked U.S. bank accounts") for each of these *PayPal* accounts. *Id.* Spada opened several of the *PayPal*-linked U.S. bank accounts under his own

name and has opened multiple accounts at over a dozen U.S. banks. *Id.* at ¶ 24, 27. Spada used the *PayPal* accounts to collect funds from defrauded jobseekers, transferred those funds to the *PayPal*-linked U.S. bank accounts, consolidated the funds among select ones of the *PayPal*-linked U.S. bank accounts, and used those funds to pay for personal expenses, trips and food, and advertising and digital marketing to further his fraudulent scheme. *Id.* at ¶ 29–32. Spada's receipt of these funds strongly suggests he also owned or controlled several of the domain names and email addresses that were used to defraud jobseekers. (Nelson Decl. 26.) *Id.* at ¶ 26.

Spada and others actively engaged in the fraud described above are or were, prior to the Court's entry of the TRO, constantly sending email messages from various email addresses and collecting jobseekers' personal information and payments. While American's investigation is ongoing as to the identities of all persons involved to date, American has demonstrated that Spada and Mary Johnston Spada, Spada's mother, in addition to Maria Cannon and Bernadette Padar are all in active concert and participation in the scheme.

### III.   APPLICABLE LEGAL STANDARD

American has filed claims under the Lanham Act and Florida common law. *See generally* Third Am. Compl. The Lanham Act provides the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Injunctive relief is also available for a violation of 15 U.S.C. § 1114(1)(a). *See id.* § 1116(d)(1)(A).

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (citations omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)). Additionally, under 15 U.S.C. § 1117(a), a plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through a defendant's distribution and sales of goods bearing counterfeit and infringing trademarks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'") (alterations in original) (*quoting Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962)).

Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Fed. Trade Comm'n v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

## IV.   ANALYSIS

The declarations and evidence Plaintiff has submitted in support of its Motion support the following conclusions of law:

1.       American has shown a substantial likelihood of prevailing on the merits of its claims that Defendant Anthony R. Spada, II is defrauding jobseekers by tricking them with email messages they believe to be genuine American email messages, when they are not.

2.       Spada and others accomplish this fraud by using counterfeits of American's federally registered trademarks, unauthorized copies of American's copyrighted images, and other images and text associated with American on the email messages.

3.       Spada and others are actively engaged in the fraud described above.

4.       While American's investigation is ongoing as to the identities of all persons involved, Anthony R. Spada, II and Mary Johnston Spada, Anthony R. Spada, II's mother, are in active concert and participation in the scheme.

5.       Spada's alleged actions constitute fraud, trademark infringement, and counterfeiting of American's federally registered trademarks, as well as copyright infringement, unfair competition, trademark dilution, and deceptive trade practices.

6.       Spada's fraud, use of counterfeits of the American Marks in commerce in the United States, trademark infringement, copyright infringement, unfair competition, trademark dilution, false advertising, and fraud and misrepresentation are causing and will continue to cause immediate and irreparable injury to American and to consumers if a preliminary injunction order does not issue.

16

7.    American's potential harm from the denial of the requested preliminary injunction order greatly outweighs the harm to Spada's legitimate interests against granting such an order.

8.    Granting American's requested preliminary injunction order is in the public interest, as it will immediately reduce fraud aimed at consumers in Florida and the United States. American has further demonstrated that Spada and others may take action to destroy data and transfer their assets and thus avoid an accounting of their profits from their unlawful activities.

9.    American has further demonstrated that Spada and others may take action to transfer their assets, which would also avoid an accounting of their profits from their unlawful activities; and

10.   Entry of an order other than a preliminary injunction order would not adequately achieve the purposes of the Lanham Act to preserve American's remedies for trademark counterfeiting, trademark infringement, unfair competition, trademark dilution, false advertising, and fraud, including, *inter alia*, identifying the full scope of Spada's unlawful activities, identifying his other co-conspirators, identifying the consumers who have been defrauded through this scheme, and identifying the monies Spada and others took from consumers and the accounts through which those monies flowed.

11.   As indicated above, Defendant Spada does not dispute the validity of the American Marks, and Spada consents to an injunction preventing him from use of the American Marks.

## V.   RECOMMENDATION

Accordingly, based on the findings of facts and conclusions of law set forth above, the undersigned respectfully **RECOMMENDS** as follows:

1.      That the Court enter a **PRELIMINARY INJUNCTION** which orders that Defendant Anthony R. Spada, II and his officers, agents, servants, and employees and any persons in active concert or participation are enjoined and restrained from:

a)      using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of the American Marks in connection with the manufacture, distribution, advertisement, or offer of services not authorized by American, or in any manner likely to cause others to believe that Spada (or his affiliates) are connected with American or the genuine American Marks;

b)      passing off, inducing, or enabling others to pass off any services related to American which are not authorized by American;

c)      making any false or misleading statements regarding American or their services, or the relationship between American and Spada;

d)      committing any other acts calculated to cause consumers or jobseekers to believe that Spada and his associates are connected with American;

e)      registering, creating, hosting, or operating any domain or subdomain containing one or more of the American Marks or any reproduction, counterfeit, copy or colorable imitation of the same;

f)      engaging in any activity constituting unfair competition with American;

g)       engaging in any business transactions with consumers contacting Spada and his associates via email that has been shown to be associated with counterfeit American Marks;

h)       assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (a) through (g);

i)       Moving, destroying, or otherwise disposing of any hard drives, thumb drives, mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system, including email data and website data, relating to or used for the fraud, counterfeiting, copyright infringement, and other acts complained of herein; or

j)       Removing, destroying or otherwise disposing of any business records or documents, including electronic business records, relating in any way to the acts complained of herein.

2.       That Spada and any of his associates are required to disable, during the pendency of this action, any counterfeit domain names or subdomains, any websites bearing counterfeit American Marks, and any email accounts associated with same, while preserving all evidence relating to same.

3.       That the bond in the amount of one thousand dollars ($1,000) posted by American pursuant to the Court's May 17, 2023, Order [ECF No. 12] is adequate for the preliminary injunction.

4.       That the asset freeze portion of the Court's TRO should be and remain in effect, subject to the modifications below.

5.       That in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and the Court's inherent equitable power to issue provisional remedies

ancillary to its authority to provide final equitable relief, Spada and his officers, servants, employees, and agents and any persons in active concert or participation with them, and any banks, savings and loan associations or other financial institutions, or agencies which engage in the transfer of real property, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from transferring, disposing of, or secreting any money, stocks or other assets of Spada, without prior approval of the Court.

6.      That Spada shall file with the Court and serve upon American's counsel an updated and complete accounting of all of Spada's assets and the location and identity thereof, within fourteen (14) days of the Court's Order.

7.      That if Spada has complied with the above paragraph, then to the extent Spada provides uncontradicted documentary proof accepted by American, such acceptance not to be unreasonably withheld, that particular assets are not proceeds of Spada's counterfeiting or other unlawful activities alleged by American, those particular assets shall be released to Spada.

8.      That if American's counsel identifies specific financial institutions it reasonably believes hold the proceeds of Spada's counterfeiting or other unlawful activities, American's counsel may serve a copy of the Court's Order on those institutions.

9.      That Spada may, upon proper showing, move for modification of the provisions of the Court's Order or concerning the restriction upon transfer of Spada's assets, including the following modifications:

a)      allowing payments for ordinary living expenses not to exceed four thousand dollars ($4,000) per month; or

b)      allowing payments for attorneys' fees.

The parties shall meet and confer on such issues and, wherever agreement is possible, shall submit a stipulated order to the Court in lieu of a motion. To the extent a motion is necessary, Spada may seek relief on an expedited basis.

10.     That Spada shall provide American's counsel with an accounting of all payments of living expenses, business expenses, and any transfers of assets made pursuant to the Court's Order and prior orders on the asset freeze, on the last business day of each month.

11.     That the language of the Court's prior order on expedited discovery remains in effect for the Defendants and for future defendants who or which may be added to this case.

12.     That Spada remains obligated to comply with the Court's May 17, 2023 TRO [ECF No. 12] and to provide Plaintiff's counsel with usernames and passwords for any and all cloud-based accounts located on any and all computers, mobile devices, thumb drives, external hard drives, and other digital storage devices reasonably likely to contain information relating to Spada's websites and emails bearing counterfeit American Marks, online business listings bearing counterfeit American Marks, banking and credit card accounts—both known and unknown to attorneys or agents of American, and communications relating to same. And,

13.     That the Preliminary Injunction remain in effect during the pendency of this action, or until further dates as set by the Court or stipulated by the parties.

The parties will have **seven (7) days** from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, Chief United States District Judge. Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal

conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 11th day of September, 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Cecilia M. Altonaga, *Chief United States District Judge*
Counsel of Record

22