UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21844-CIV-ALTONAGA/Damian

AMERICAN AIRLINES, INC.,

 Plaintiff,
v.

ANTHONY R. SPADA, II,

 Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Magistrate Judge Melissa Damian's Report and Recommendation [ECF No. 175], entered on September 11, 2023. Defendant, Anthony R. Spada, II, filed Objections to the Report [ECF No. 176], and Plaintiff, American Airlines, Inc. ("AA"), filed a Response to Defendant's Objections [ECF No. 199]. The Court has carefully reviewed the Report, the parties' written submissions, the evidentiary hearing transcript, the record, and applicable law. For the following reasons, the Report is affirmed and adopted.

**I. BACKGROUND**

On May 17, 2023, Plaintiff filed an eight-Count Complaint [ECF No. 1] alleging Defendant engaged in a fraudulent scheme that used Plaintiff's registered trademarks (the "American Marks") to trick unsuspecting jobseekers into sending Defendant money and personal information. (*See generally* Compl.). Plaintiff moved for and the Court granted a Temporary Restraining Order ("TRO") freezing Defendant's assets and imposing other restrictions. (*See generally* May 18, 2023 TRO [ECF No. 12]). The TRO expired on July 7, 2023. (*See* June 15, 2023 Order [ECF No. 42]).

Before the TRO expired, Plaintiff filed a Motion for Preliminary Injunction [ECF No. 43]. Defendant filed a Response [ECF No. 76], to which Plaintiff filed a Reply with attached exhibits [ECF No. 93]. The Court referred the Motion to Magistrate Judge Damian for a report and recommendation. (*See* July 24, 2023 Order [ECF No. 98]). In the intervening time between Plaintiff's filing of the Motion and issuance of the Report, Plaintiff filed a First Amended Complaint [ECF No. 102], a Second Amended Complaint [ECF No. 110], and a Third Amended Complaint ("TAC") [ECF No. 143], alleging Lanham Act claims, federal copyright infringement, and related state-law claims. These amendments added additional Defendants who have since been dismissed. (*See* Oct. 4, 2023 Order [ECF No. 202] 1 (dismissing Defendants Maria Canon and Berndadette Padar);[1] Notice of Voluntary Dismissal [ECF No. 203] (dismissing Defendant Mary J. Spada)). Anthony R. Spada II is the only remaining Defendant in the action.

Magistrate Judge Damian held an evidentiary hearing on August 9, 2023 [ECF No. 123] and the Report followed. In the Report, Magistrate Judge Damian details findings of fact and conclusions of law, recommending that Plaintiff's Motion be granted and an injunction issue. (*See generally* Report).

## II. LEGAL STANDARDS

***Review of a Magistrate Judge's Disposition***. District courts must review *de novo* "any part of [a] magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3) (alteration added). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). A district court reviews the parts of a magistrate judge's report and recommendation that were not properly objected to for clear error.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

*See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." (alteration added)).

In reviewing a magistrate judge's disposition *de novo*, a district court may "adopt the credibility findings made by a magistrate judge without conducting a new hearing before making a final determination." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007). Nevertheless, "[w]hen objections are made to findings which the magistrate judge made based upon the testimony of witnesses," the district court is required "to review the transcript or listen to the tape-recording of those proceedings." *Willis v. United States*, 346 F. App'x 404, 406 (11th Cir. 2009) (alteration added; quotation marks and citation omitted).

***Preliminary Injunction***. To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted).

### III. DISCUSSION

Defendant objects to the Report, arguing the Motion is moot and that Plaintiff fails to establish the necessary elements for issuance of a preliminary injunction. (*See generally* Objs.). Yet, Defendant "does not oppose an injunction because he has not and does not intend to use AA's trademark(s)." (*Id.* 4). Instead, Defendant requests that the Court enter an injunction without findings of fact and conclusions of law. (*See id.*).

Defendant's request is unworkable because "[i]n granting or refusing an interlocutory injunction, the court must [] state the findings and conclusions that support its action." Fed. R.

Civ. P. 52(a)(2) (alterations added). Therefore, the Court addresses Defendant's objections, as well as Plaintiff's opposing arguments. (*See generally* Objs.; Resp. Objs.).

### A. Mootness

Defendant first argues that because the Motion is based on the initial Complaint, and the Complaint has now been superseded by the TAC, the Motion must be moot. (*See* Objs. 4–5). The filing of an amended complaint does not automatically render moot a motion for preliminary injunction. Admittedly, courts sometimes deny motions for preliminary injunction as moot when leave to amend is granted. *See, e.g.*, *H.E. v. Horton*, No. 15-cv-3792, 2016 WL 2744827, at *2 (N.D. Ga. May 10, 2016) (denying preliminary injunction motion as moot where the plaintiff sought leave to amend to add further allegations). This often reflects case management considerations by ensuring that a new preliminary injunction motion is supported by the most updated allegations, especially when the initial pleading was deficient. *See e.g.*, *Scott v. City of Daytona Beach Fla.*, No. 22-cv-2192, 2023 WL 1765652, at *2 (M.D. Fla. Feb. 3, 2023) (dismissing complaint as shotgun pleading and ordering new briefing on motion for preliminary injunction because it relied on deficient pleading in the complaint); *Raja v. Englewood Cmty. Hosp., Inc.*, No. 12-cv-2083, 2013 WL 12157136, at *2 (M.D. Fla. Apr. 9, 2013) (dismissing amended complaint as shotgun pleading, granting leave to amend, and denying preliminary injunction as moot).

But a motion for preliminary injunction does not only depend on a complaint's allegations. In fact, "[a] motion for preliminary injunction must be supported by evidence; a party is not entitled to preliminary injunctive relief 'solely on the basis of its naked allegations.'" *New Vision Eye Ctr., LLC v. Fla. Eye Inst., PA*, No. 09-14441-Civ, 2010 WL 11602458, at *2 (S.D. Fla. Mar. 23, 2010) (alteration added; quoting *Church of Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d

598, 608 (11th Cir. 1985)). Consequently, courts often consider matters outside the pleadings in deciding a motion for preliminary injunction. *See, e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" (citation omitted)).

Here, not only are the allegations against Defendant in the Complaint very similar to those in the TAC (*compare* Compl. *with* TAC), the Court considered exhibits submitted in support of the Motion and heard four and a half hours of testimony and argument on the Motion (*see* August 9, 2023 Hr'g; Report 16). Therefore, the Court has a sufficient basis on which to rule on the Motion notwithstanding subsequent amendments to the Complaint, which did not render moot the Motion.

Next, Defendant argues Plaintiff cannot demonstrate irreparable harm — one of the elements required for a preliminary injunction to issue — "because the challenged conduct has ceased[.]" (Objs. 10–11 (alteration added)). As Plaintiff points out, this is essentially a second mootness argument based on the doctrine of voluntary cessation. (*See* Resp. Objs. 4–5 (citing *Norwegian Cruise Line Holdings Ltd v. State Surgeon Gen., Fla. Dep't of Health*, 55 F.4th 1312 (11th Cir. 2022))).

Defendant "bears a heavy burden of demonstrating that his cessation of the challenged conduct renders the controversy moot." *Longhini v. Jymd Food Corp.*, No. 20-cv-24525, 2020 WL 8483846, at *3 (S.D. Fla. Dec. 16, 2020) (citation and quotation marks omitted). "[M]ere voluntary cessation of allegedly illegal conduct does not moot a case." *Norwegian Cruise Line Holdings Ltd*, 55 F.4th at 1316 (alteration added; citation and quotation marks omitted). Rather,

a defendant must establish it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Jymd Food Corp.*, 2020 WL 8483846, at *3 (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005); other citations omitted).

In this case, Defendant simply asserts that "[i]t is undisputed that the person using the AA mark to commit a fraud has stopped, and that [Defendant] has represented to the court and consented that he will not use the mark." (Objs. 10 (alterations added)). Given Defendant does not even purport to know who committed the alleged fraud — seemingly taking the position he is not that person — it is difficult to see how he could meet his burden to demonstrate that the challenged conduct will not recur. Accordingly, Defendant's objection based on voluntary cessation lacks merit.

### B. Likelihood of Success on the Merits

Aside from mootness, Defendant argues Plaintiff fails to establish that it is likely to succeed on the merits of its claims, making a preliminary injunction inappropriate. (*See* Objs. 5–10). Defendant advances two separate arguments: that the operative complaint cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and that the Report's findings of fact are not supported by the evidence. (*See id.*).

First, Defendant asserts the operative complaint is a shotgun pleading and argues Plaintiff fails to plead its Lanham Act claims with particularity in accordance with Federal Rule of Civil Procedure 9(b). (*See id.* 5–9). According to Defendant, these pleading deficiencies not only compel dismissal under Rule 12(b)(6), but also doom Plaintiff's request for a preliminary injunction. (*See id.*).

"The standard on a motion to dismiss is quite different from the standard for granting a preliminary injunction." *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183,

1193 (D.N.M. 2010) (alteration adopted; citation and quotation marks omitted). A motion to dismiss tests the legal sufficiency of the complaint and asks whether the allegations, taken as true, make the claims plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preliminary injunction standard is more stringent — a plaintiff's claims must not be merely plausible, but likely to succeed on the merits. *See Schiavo*, 403 F.3d 1223, 1225–26. It follows that a complaint that does not state a *prima facie* case cannot undergird a preliminary injunction. *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("To establish a substantial likelihood of success on the merits, a plaintiff must demonstrate a likelihood of success at trial as to [] its *prima facie* case[.]" (alterations added; citations omitted)); *Burritt v. New York State Dep't of Transp.*, No. 08-cv-605, 2008 WL 5377752, at *1 (N.D.N.Y. Dec. 18, 2008) ("An action that could not survive a [Rule] 12(b)(6) motion could not, *a fortiori*, satisfy the preliminary injunction standard[.]" (alterations added)).

Defendant's Rule 12(b)(6) arguments, however, do not attack the elements of Plaintiff's *prima facie* case. Plaintiff's shotgun pleading argument, which challenges how Plaintiff grouped Defendants in each Count, concerns notice. (*See* Objs. 5–8); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them[.]" (alterations added; footnote call number omitted)).[2] Similarly, "fair notice is perhaps the most basic consideration underlying Rule 9(b)," *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (alteration adopted; quotation marks and citation omitted); and Rule 9(b)'s particularity requirement "does not change the elements of the underlying cause of action[,]" *Rusty115 Corp. v. Bank of Am., N.A.*, No. 22-cv-22541, 2023 WL 6064518, at *2

---

[2] In any case, the shotgun pleading argument is irrelevant given that the other Defendants have been dismissed from the action.

(S.D. Fla. Sept. 18, 2023) (alteration added). Absent an attack on Plaintiff's *prima facie* claims, Defendant's pleading arguments do not defeat a preliminary injunction. Moreover, the Court agrees with Plaintiff that a motion for preliminary injunction is otherwise an inappropriate vehicle to address Defendant's Rule 12(b)(6) arguments. (*See* Resp. Objs. 3–4).

Finally, Defendant argues the Magistrate Judge erred in finding Plaintiff's claims were likely to succeed on the merits because Plaintiff presented "insufficient evidence to prove that [Defendant] created, used, or operated an email using [Plaintiff's] mark[,]" and no evidence showing Defendant "owned or controlled any domain name using [Plaintiff's] mark." (Objs. 9–10 (alterations added)). Plaintiff considers these arguments "[a]bsurd" and "frivolous[,]" pointing to evidence in the record supporting the Magistrate Judge's conclusions. (Resp. Objs. 4 (alterations added)).

As explained, a motion for preliminary injunction must be supported by evidence, and a Court may look to matters outside the pleadings to determine whether injunctive relief is warranted. *See New Vision Eye Ctr.*, 2010 WL 11602458, at *2; *Levi Strauss & Co.*, 51 F.3d at 985. Moreover, "a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co.*, 51 F.3d at 985.

Plaintiff presented declarations and exhibits supporting its allegation that Defendant sent the fraudulent emails and that Defendant controlled at least one domain name bearing Plaintiff's mark. (*See* Reply 3–4. *Compare id.*, Ex. 1 (reproducing fraudulent email received by jobseeker) *with id.*, Ex. 2 (reproducing email template located on Defendant's computer)). And at the August 9, 2023 Hearing, the Court heard testimony from Tanya Scott and expert Todd Renner that was consistent with such conclusions. (*See* Aug. 9, 2023 Hr'g Tr. [ECF No. 163] 18:17–36:11 (identifying documents used to scam Scott); *see id.* 65:15–98:17 (identifying files associated with

8

Plaintiff's marks and the alleged fraudulent scheme on a Samsung laptop attributed to Defendant)). After considering this evidence, the Report appropriately concluded that Plaintiff had "shown a substantial likelihood of prevailing on the merits of its claims" against Defendant. (Report 16 (stating that "[t]he declarations and evidence Plaintiff [] submitted in support of its Motion support the [Report's] conclusions of law" (alterations added))).

## IV. CONCLUSION

The Undersigned has reviewed the Report, the record, and the applicable law to assure herself that no clear error appears on the face of the record. In the light of that review, the Undersigned agrees with Magistrate Judge Damian's analysis and recommendations. For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Report and Recommendation **[ECF No. 175]** is **AFFIRMED AND ADOPTED**. Defendant's Objections to the Report **[ECF No. 176]** are **OVERRULED** and Plaintiff's Motion for Preliminary Injunction **[ECF No. 43]** is **GRANTED**. It is further ordered as follows:

1. Defendant Anthony R. Spada, II and his officers, agents, servants, and employees and any persons in active concert or participation are enjoined and restrained from:

    a. using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of the American Marks in connection with the manufacture, distribution, advertisement, or offer of services not authorized by American, or in any manner likely to cause others to believe that Spada (or his affiliates) are connected with American or the genuine American Marks;

    b. passing off, inducing, or enabling others to pass off any services related to

  American which are not authorized by American;

 c. making any false or misleading statements regarding American or their services, or the relationship between American and Spada;

 d. committing any other acts calculated to cause consumers or jobseekers to believe that Spada and his associates are connected with American;

 e. registering, creating, hosting, or operating any domain or subdomain containing one or more of the American Marks or any reproduction, counterfeit, copy or colorable imitation of the same;

 f. engaging in any activity constituting unfair competition with American;

 g. engaging in any business transactions with consumers contacting Spada and his associates via email that has been shown to be associated with counterfeit American Marks;

 h. assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (a) through (g);

 i. moving, destroying, or otherwise disposing of any hard drives, thumb drives, mobile devices, computers, or data stored on a computer, server, or in a cloud-based storage system, including email data and website data, relating to or used for the fraud, counterfeiting, copyright infringement, and other acts complained of herein; or

 j. removing, destroying or otherwise disposing of any business records or documents, including electronic business records, relating in any way to the acts complained of herein.

CASE NO. 23-21844-CIV-ALTONAGA/Damian

2. Spada and any of his associates are required to disable, during the pendency of this action, any counterfeit domain names or subdomains, any websites bearing counterfeit American Marks, and any email accounts associated with same, while preserving all evidence relating to same.

3. The bond in the amount of one thousand dollars ($1,000) posted by American pursuant to the May 17, 2023, Order [ECF No. 12] is adequate for the preliminary injunction.

4. The asset freeze portion of the Court's TRO should be and remains in effect, subject to the modifications below.

5. In accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. section 1116(a), and the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, Spada and his officers, servants, employees, and agents and any persons in active concert or participation with them, and any banks, savings and loan associations or other financial institutions, or agencies which engage in the transfer of real property, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from transferring, disposing of, or secreting any money, stocks or other assets of Spada, without prior approval of the Court.

6. Spada shall file with the Court and serve upon American's counsel an updated and complete accounting of all of Spada's assets and the location and identity thereof, within fourteen (14) days of this Order.

7. If Spada has complied with the above paragraph, then to the extent Spada provides uncontradicted documentary proof accepted by American, such acceptance not to

be unreasonably withheld, that particular assets are not proceeds of Spada's counterfeiting or other unlawful activities alleged by American, those particular assets shall be released to Spada.

8. If American's counsel identifies specific financial institutions it reasonably believes hold the proceeds of Spada's counterfeiting or other unlawful activities, American's counsel may serve a copy of the Court's Order on those institutions.

9. Spada may, upon proper showing, move for modification of the provisions of the Court's Order or concerning the restriction upon transfer of Spada's assets, including the following modifications:

    a. allowing payments for ordinary living expenses not to exceed four thousand dollars ($4,000) per month; or

    b. allowing payments for attorneys' fees.

    The parties shall meet and confer on such issues and, wherever agreement is possible, shall submit a stipulated order to the Court in lieu of a motion. To the extent a motion is necessary, Spada may seek relief on an expedited basis.

10. Spada shall provide American's counsel with an accounting of all payments of living expenses, business expenses, and any transfers of assets made pursuant to the Court's Order and prior Orders on the asset freeze, on the last business day of each month.

11. The language of the Court's prior Order on expedited discovery remains in effect for the Defendant and for future defendants who or which may be added to this case.

12. Spada remains obligated to comply with the Court's TRO and to provide Plaintiff's

counsel with usernames and passwords for any and all cloud-based accounts located on any and all computers, mobile devices, thumb drives, external hard drives, and other digital storage devices reasonably likely to contain information relating to Spada's websites and emails bearing counterfeit American Marks, online business listings bearing counterfeit American Marks, banking and credit card accounts — both known and unknown to attorneys or agents of American, and communications relating to same.

13. The Preliminary Injunction shall remain in effect during the pendency of this action, or until further dates as set by the Court or stipulated by the parties.

**DONE AND ORDERED** in Miami, Florida, this 18th day of November, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record